407 A.2d 1351

**In re Clarinda WILDONER, Michelle Wildoner, Melissa Wildoner, Tammy Wildoner, Bryan Wildoner, Minor Children.**

**Appeal of Beverly WILDONER.**

Superior Court of Pennsylvania.

Argued March 21, 1979.

Decided July 27, 1979.

272

Donald F. Driscoll, Bloomsburg, for appellant.

Alvin J. Luschas, Bloomsburg, submitted a brief on behalf of the minor children.

Elwood R. Harding, Jr., Bloomsburg, for Columbia County Children's Services, an interested party.

William Patrick, Berwick, did not file a brief on behalf of Glynn Wildoner, an interested party.

Before CERCONE, President Judge, and WATKINS and HOFFMAN, JJ.

274

WATKINS, Judge:

This is an appeal from the order of the Court of Common Pleas of Columbia County, by the mother of five children, which removed the children from her custody pursuant to 11 P.S. 50–101, et seq. known as the "Juvenile Act".

Appellant's first contention on appeal is that the evidence presented at the hearing before the court below, held on August 15, 1978, was insufficient to warrant the placement of the children with Children and Youth Services of Columbia County. The testimony presented at the hearing revealed that appellant was the mother of five children ages 6, 5, 3, 2 and 1. Appellant, her husband and the five children resided in a third floor, two bedroom, four room apartment. During the period of four months immediately prior to the hearing the various welfare workers had visited appellants home two to three times per week. During these visits, appellant's apartment was unclean and unsanitary. Cats were observed licking the baby's milk bottles, the floors of the entire apartment were covered with animal excrement, the baby's crib was covered with feces and the mattress was urine soaked, the apartment was infested with flies due to the absence of screens for the windows and the flies covered the kitchen table, food and the children. Numerous dogs and cats also occupied the apartment. Dried and moldy food were found in the hair of the youngest child. Although the apartment was situated 30–35 feet above ground level, the open window, easily accessible to the children, provided no protection against the falling to the ground by the children. It was also established that even though a registered nurse had informed appellant that one of the children was allergic to cow's milk that appellant had continued to give cow's milk to that child resulting in allergic reactions, viz, wheezing, lethargy and difficulty in breathing. It was also established that various county personnel from the County Homemakers' Service had been assigned to help appellant clean her apartment on a regular basis but that appellant, although she had helped to clean the apartment on some occasions had, on other occasions, played cards with various visitors when the apartment was being cleaned.

Appellant's testimony was that she intended to rid the home of the pets, that she cleaned the apartment on a regular basis and that she was improving the general condition of the apartment but that she became depressed after hearing that a farmhouse she desired to rent was no longer available and therefore had allowed the condition of the house to lapse into its former state of uncleanliness. She also testified that she had been told not to give the baby a "whole lot of cow's milk" until goat's milk could be substituted for it. It was also established that Mr. Wildoner worked part time during the seven months prior to the hearing and that the appellant had not been working so that both parents had been at home and available to care for the children.

A dependent child is defined in the "Juvenile Act", inter alia, as one who "is without proper parental care or control, substance, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals . . . " *11 P.S. 50–102(4)(i)*. Before a child may be taken from his parents proof of a *clear necessity* for such action must be adduced. (Emphasis —ours) *Interest of La Rue,* 244 Pa.Super. 218, 366 A.2d 1271 (1976). The facts, as outlined above, demonstrate a clear necessity for removing the five Wildoner children from their parents. A child's constant exposure to filthy, unsanitary, unhealthy and dangerous conditions in its home presents a clear necessity for removing that child from such an environment and all of the aforementioned conditions existed at the Wildoner home. Mrs. Wildoner's promises to change these conditions are certainly not binding on the trial court and we hold that the court below was justified in removing the children from that environment.

Appellant's next contention is that the court below erred when it excluded certain written reports presented by the appellant. One of the reports was prepared by Home Health Service Nurse who was unavailable at the time of the hearing. Another report was a written statement of the family's physician. No reason is given for the physician's

absence from the hearing. Appellant argues that both reports should have been admitted as "business records exceptions" to the hearsay rule. The business records exception to the hearsay rule is set forth in the *Act of May 4, 1939, No. 35, § 2 (28 P.S. 91b)* which provides as follows:

"A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

The very basis for the business records exception to the hearsay rule is the inherent reliability of such records. *Uitts v. General Motors Corp.,* 411 F.Supp. 1380 (D.C.1974), affirmed 513 F.2d 626 (3rd Cir.). It was the intention of the legislature, in enacting this section, to grant the trial court discretionary power as to the admissibility of business records, provided they meet the standards set forth in the Act and are otherwise admissible as evidence and not violative of other evidentiary rules. *Henderson v. Zubik,* 390 Pa. 521, 136 A.2d 124 (1957). Since we find nothing inherently reliable in reports on the condition of a person's household prepared by a social agency we do not feel that the trial court abused its discretion when it refused to admit the report of the Home Health Services officer into evidence over opposing counsel's objection. Such reports invariably contain certain subjective evaluations of the person preparing the report and, as such, should not be admitted into evidence over the objections of one of the party's to the action unless the person who prepared the report is available for cross-examination. Likewise, since no reason was given for the physician's absence on the day of the hearing we hold that the court below did not abuse its discretion in refusing to admit that report into evidence. Were we to hold otherwise we would almost certainly soon be confronted with a situation where a court had removed children from their

parents based upon reports of social agency personnel admitted as "business records" exceptions to the hearsay rule where the person who prepared the report failed to appear in court. In such an instance we feel certain that counsel for the parents would vigorously protest such procedure. Since we cannot ignore the possibility of "trial by reports" which would effectively deny parties the right to cross-examination we hold that the court below did not err when it refused to admit the reports in question into evidence.

■ Appellant's final contention is that the court below abused its discretion when it refused to grant a separate dispositional hearing for each of the children's parents. She claims that this was necessary because Susquehanna Legal Services could not ethically represent both parents at the hearing since appellant had separated from her husband and sought to blame her husband for the unsanitary and dangerous conditions. On appeal the court below appointed separate counsel for appellant's husband but the record reveals that her husband did not wish to pursue the appeal and apparently had no interest in the case. The problem with this contention is that the issue of separate hearings for each parent was never raised until the day of the hearing and no explanation or facts were provided to the court below as to the nature of the alleged conflict of interest. Appellant's counsel merely advised the court that a "conflict of interest" had arisen. However, counsel continued to represent appellant at the hearing. It would appear that in the event counsel had certain information which would be helpful to appellant but which he could not adduce at the hearing because that information was obtained pursuant to a confidential relationship with appellant's husband that the proper course for him to take would be to withdraw from the case so as not to endanger the confidential relationship or appellant's interest. It would also appear that in most such cases any information counsel possessed could be provided to him by appellant herself in which case no conflict would result. In any event we find it impossible to conclude that appellant was not responsible, in part at least, for the condition of the

parties' house and treatment of the children. Likewise we see no reason why any of the five children would fare any better than the other children were they to remain with appellant and, as discussed above each of the children was "dependent" under the meaning of the Act and a clear necessity was shown for removing all of said children from appellant's custody.

Order affirmed.

CERCONE, President Judge, concurs in the result.