413 A.2d 371

**In re ESTATE of Robert INDYK, Deceased.**

**Appeal of Estate of Robert Indyk, Deceased.**

Supreme Court of Pennsylvania.

Submitted Sept. 17, 1979.

Decided Dec. 21, 1979.

Reargument Denied April 29, 1980.

Jack Palkovitz, Palkovitz & Palkovitz, McKeesport, for appellant.

Daniel J. Weis, Weis & Weis, Pittsburgh, for National Union Fire Ins. Co.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

NIX, Justice.

This is an appeal from a final decree entered by the court en banc, Orphans' Court Division, Allegheny County, dated September 21, 1978 and providing for the allowance of the claim of National Union Fire Insurance Company (National Union) against the estate of Robert Indyk, deceased, in the amount of one million, five hundred and eight thousand, six

hundred and eighty dollars and ninety-two cents ($1,508,-680.92). Appellant instantly contends that the court erred by improperly accepting various exhibits offered to establish the claim and that the claimant failed to prove the claim against the estate by clear, direct, precise and convincing evidence. We find all of these arguments to be unimpressive and affirm for the reasons that follow.

The decedent during his lifetime was the secretary of the Indyk Brothers Construction Company (Construction Company) which engaged in road building and earth-moving activities for governmental and private entities. In the course of its business, the Construction Company would execute surety bonds to guarantee payment of materials, supplies and/or completion of the various projects. The instant claim arises from surety bonds furnished by National Union for the benefit of the Commonwealth of Pennsylvania regarding certain highway construction contracts which Construction Company had agreed to perform. The decedent executed an agreement, in his individual capacity, to indemnify National Union in the event of a breach.

The original construction, performance and material bonds were executed by National Union in the early 1960's. In 1965, the Construction Company defaulted on certain construction projects and National Union, as surety, elected to take over and complete the commitments, using Construction Company to perform the work. The total net loss to the surety resulting from the default was in excess of one million dollars ($1,000,000.00). In 1968, National Union was acquired by American International Group (Group) and the records of National Union as to this claim were transferred to New York, New York, then to San Francisco, California, then returned to New York City and eventually returned to Pittsburgh where they had been originally kept by National Union. As stated, National Union submitted a claim against the estate of the decedent, which had a balance for distribution of approximately twenty-five thousand dollars ($25,-000.00). After hearing all of the evidence, the chancellor ordered that National Union should share in the balance for

distribution and the court en banc dismissed the exceptions and a final decree was entered. The executors of the estate appealed to this Court pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(3) now codified at 42 Pa.C.S.A. § 722(3) (1979 Pamphlet).

The first assignment of error offered by appellant is that the chancellor erred in admitting into evidence the business records of National Union under the Uniform Business Records As Evidence Act, Act of May 4, 1939, P.L. 42, No. 35, § 2; 28 P.S. § 91b (1958).[1] The crux of appellant's argument is that the witness who sought to authenticate the records had no personal knowledge of National Union's business records prior to 1969 and was, therefore not qualified to testify as to their preparation or to provide a proper foundation for their introduction.

Section 2 of the Act provides:

A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

The following observation as to the purpose of the Act is pertinent to the instant issue:

The general purpose of the Business Entry Statute was to enlarge the old common-law shopbook exception to the hearsay rule by eliminating the many illogical distinctions which had evolved during the period when the one-man type of business enterprise was the predominant dorm of business organization. Today, instead of a single shopkeeper who transacts and records the sale, there are a myriad of sales girls, department heads, bookkeepers, etc., etc., etc., who compile summaries and consolidate the

1. Repealed and recodified in substantially the same form at 42 Pa.C.S.A. § 6108(b) (1979 Pamphlet).

records made by others. Quite often different individuals have personal knowledge of the various phases of a transaction so that no one individual has knowledge of the entire transaction. In addition, the frequent turnover of personnel often makes it impossible to identify the employee—if it were only one—who took part in the transaction. Under these circumstances, to require the entrant to have personal knowledge of the event recorded, and to require proof of the identity of the recorder, would exclude almost all evidence concerning the activities of large business organizations—a result diametrically opposed to the purpose and spirit of the [Uniform] Business Records as Evidence Act. (Footnote omitted).

*Fauceglia v. Harry,* 409 Pa. 155, 158–59, 185 A.2d 598, 600 (1962).

The purport of the Act is to merely require that the basic integrity of the record keeping is established. Where it can be shown that the entries were made with sufficient contemporaneousness to assure accuracy [2] and that they were made pursuant to the business practices and not influenced by the litigation in which they are being introduced, a sufficient indicia of reliability is provided to overcome their hearsay nature.

Every exception to the hearsay rule is based upon (1) the necessity for such evidence, and (2) the circumstantial probability of its trustworthiness. 5 Wigmore, Evidence § 1420 (3d ed. 1940). In the case of records kept in the regular course of business *the circumstantial guarantee of trustworthiness arises from the regularity with which they are kept.* (Emphasis added).

*Fauceglia v. Harry,* 409 Pa. at 160, 185 A.2d at 601.

**2.** A determination as to whether the event is sufficiently contemporaneous with the event is left to the broad discretion of the trial court. See *Henderson v. Zubik,* 390 Pa. 521, 136 A.2d 127 (1957). The appropriate test in determining whether the time span between the event and its entry is such as to preclude the admission of the evidence should be determined by whether the period is so great that it suggests a danger of inaccuracy resulting from memory lapse. McCormick, Law of Evidence, § 309 (2d ed. 1972).

As long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence. See generally Uitts v. General Motors Corp., 411 F.Supp. 1350 (E.D.Pa.1974), aff'd. 513 F.2d 626 (3d Cir. 1975); Commonwealth v. Kelly, 245 Pa.Super. 351, 369 A.2d 438 (1976); Poltorak v. Sandy, 236 Pa.Super. 355, 345 A.2d 201 (1975); Hinkle v. Unemployment Compensation Board, 9 Pa. Cmwlth. 512, 308 A.2d 173 (1973). Thus it is not essential for the admission of evidence under this section to produce either the person who made the entries in question or the custodian of the record at the time the entries were made. See Bobbie Brooks, Inc. v. Hyatt, 195 Neb. 596, 239 N.W.2d 782 (1976). The record clearly supports the chancellor's finding that the witness in the instant case possessed adequate knowledge of the regularity of the record keeping process of National Union to qualify the challenged records under the Act.

James R. Coulter testified that he is a casualty claims supervisor with Group. Coulter testified that he was very familiar with the records contained in National Union's bond claim file concerning the Indyk Brothers Construction Company. He testified that he was also aware of the record keeping requirements and practices of the insurance industry regarding surety contracts with governmental authorities. He testified that although he had no personal knowledge of National Union's record keeping prior to 1969, upon examination he found that these records had been kept in conformity with the record keeping practices of the insurance industry. Moreover, governmental regulations had been promulgated covering the keeping of these records and that National Union's records were in full compliance with those regulations. The governmental regulations required that the entries by made by persons having knowledge of the transactions to which the particular entry relates as a regular business practice. From 1969 when National Union

was acquired by Group, the witness has been personally in charge of these records. Payments totaling more than $479,000.00 were made by the surety after the date that Coulter had been given the responsibility for these records.[3] This testimony clearly supports the admission of the evidence under the exception provided by the Act. Thus this claim of error is without merit.

■ The second assignment of error represents a polyglot of arguments attempting to demonstrate appellee's failure to establish its claim against the estate by evidence which is "clear, direct, precise and convincing." *In re Est. of Edward Hilary Reuss, Deceased*, 422 Pa. 58, 62, 220 A.2d 822, 825 (1966); *Petruzzi Estate*, 410 Pa. 554, 557, 190 A.2d 314, 315 (1963); *Petro v. Secary Est.*, 403 Pa. 540, 543, 170 A.2d 325, 327 (1961). All of these arguments are unpersuasive. First, it is urged that since the claim is based upon bonds which were furnished regarding certain highway construction contracts, the failure to offer into evidence the bonds or contracts was fatal to appellee's case. The instant claim against the estate was based upon an indemnity agreement executed by the decedent in his individual capacity. Thus the failure to introduce into evidence the bonds and/or ccontracts that occasioned the execution of the indemnity agreement is obviously not a fatal defect in the proof of the claim. The indemnity agreement signed by deceased in his individual capacity was admitted into evidence. Further the record is clear that there was a default causing loss to National Union for which it was entitled to recover under the terms of the indemnity agreement relied upon. Second, appellant attacks upon the attestation of the Notary Public, the admission of copies of the original documents, the use of a summary ledger sheet as an aid during the witness's

3. We note that even if the evidentiary objection had merit it would not exclude that portion of the claim that was based upon entries entered after Coulter had assumed supervision of the records. This reduced sum alone would far exceed the amount available in the estate for distribution.

testimony are all totally devoid of merit and do not require discussion.

Decree affirmed. Cost to be paid by appellants.

MANDERINO, J., did not participate in the decision of this case.