455 A.2d 637

**Jeanine THOMAS, Trading and doing business as Thomas Bros. Coal Company**

**v.**

**ALLEGHENY & EASTERN COAL CO., Appellant.**

Superior Court of Pennsylvania.

Argued May 19, 1982.

Filed Nov. 30, 1982.

Reargument Denied Feb. 11, 1983.

Petition for Allowance of Appeal Denied June 9, 1983.

334

Laurance B. Seaman, Clearfield, for appellant.

Carl A. Belin, Clearfield, for appellee.

Before ROWLEY, MONTEMURO and VAN der VOORT, JJ.

VAN der VOORT, Judge:

Plaintiff-appellee, Thomas, contracted by purchase order and several amendments thereto, to supply to defendant-appellant, Allegheny & Eastern Coal Co. (hereafter referred to as Allegheny) 20,000 tons of coal at $14.25 per ton. The coal was to be shipped f.o.b. the mines (in Pennsylvania) and consigned to "Allegheny & Eastern Coal Co. for the Acct. of Foreston Coal International, Inc." The destination was

Baltimore, Maryland. The stated "guarantees" on the "Purchase Order" read as follows:

Guarantees: SPECIFICATIONS:

B.T.U. 13000[1] Min. guaranteed (B.T.U.'s will be determined by samples taken at Baltimore)

Penalty Premium    Premium
20¢ Per 100 B.T.U. over 13000    Penalty 40¢ Per Hundred under 13000

Sul. 1.5%    Over 1.5% Rejection
(Footnote supplied)

Thomas actually shipped 19,486.35 tons,[2] and requested payment at $19.25 per ton, for a total of $277,680.49. Allegheny paid Thomas $218,417.41. Thomas filed the present suit in assumpsit seeking payment of the balance of $59,261.08.[3]

Delivery was admitted in the pleadings, and the presiding Judge Reilly ruled that the burden lay with the appellant to prove the B.T.U.'s of the coal when delivered in Baltimore. In order to carry that burden Allegheny offered the report of a chemist, employed by Wiley & Co., Inc., a testing laboratory. Judge Reilly ruled that the report was inadmissible because it was not properly authenticated under the Uniform Business Records as Evidence Act.[4] The Judge then directed a verdict for Thomas calculated at the basic price of $14.25 per ton. After the jury was discharged, the court molded the verdict to include interest.

On appeal, appellant-Allegheny raises four contentions:

A. That plaintiffs-appellee should have been nonsuited for failure to prove that the coal delivered to appellant met the specifications of 12,300 B.T.U.'s;

1. This specification was later changed by agreement to 12,300 B.T.U.

.2. The coal was billed to Foreston Coal at an agreed price of $15.00 per ton. So far as the briefs disclose, there was no controversy between Foreston and appellant as to that price.

3. Amended at the trial to $52,755.82.

4. 42 Pa.C.S. § 6108.

B. That the court should not have directed a verdict for appellee, because there was sufficient evidence in the case that the coal did not meet the requisite specification of 12,300 B.T.U.'s;

C. That the analysis reports of the testing laboratory should have been received in evidence; and

D. That the court erred in molding the verdict to add interest.

A. The burden of proof.

In essence, this first contention is dependent upon a determination of whether seller or buyer had the initial burden of proving a deviation from the contractually agreed quality of the coal of 12,300 B.T.U.'s.

By admission in the pleadings, appellee proved the contract, the delivery in Baltimore, the acceptance by the buyer, and the payment of a part of the contract price. The trial judge then ruled that the burden shifted to the appellant to prove any pertinent deviation of the B.T.U.'s from the stated standard of 12,300. In the posture of this case we believe the ruling was correct.

It is clear in this case that the tests for B.T.U.'s were to be made at destination (in Baltimore) by or on behalf of the buyer, or of his consignee. Since the tests were intended to be made, and in fact were made in this case in Baltimore, after delivery of the coal, by a testing laboratory chosen by the buyer's consignee (Foreston Coal), and particularly since appellant was relying upon the results of those tests as a basis of an adjustment of the price to appellant's advantage, common sense argues strongly that the burden of proof devolved upon Allegheny.

We find support for such a result under two different but related legal principles. If viewed as a warranty problem, the party claiming a breach of the warranty must present proof of it. *Ricci v. Barscheski*, 179 Pa.Superior Ct. 351, 116 A.2d 273 (1955); *U.S. Gypsum Co. v. Birdsboro Steel FDY.*, 160 Pa.Superior Ct. 548, 52 A.2d 344

(1947). In this case, the agreement guaranteed coal of a quality of 12,300 B.T.U.'s; appellant argues the quality was less; appellant had the burden to prove it.

■ Another way to approach the current controversy is to decide whose burden it was to prove the negative, i.e., the noncompliance concerning the quality contracted for. Where the non-existence or the negative of a fact can be demonstrated more easily by one party than the other, the burden of proof may be placed on the party more readily able to demonstrate the negative. *Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A.2d 668 (1968); accord *Meth v. Broad St. & Bonded B. & L.*, 346 Pa. 331, 30 A.2d 119 (1943). Here Allegheny assumed the responsibility of testing the coal; Allegheny performed the required testing. Therefore the court could properly burden appellant with the showing that the coal received did not comply with the agreement.

B. Evidence in the record of the B.T.U.'s.

Accepting arguendo that the non-suit was properly refused, the appellants contend that there was sufficient evidence, through the evidence of Thomas and of Ross W. Clawges, a field representative of the eventual consumer, Foreston, that the coal did not meet the 12,300 B.T.U. specifications, therefore, appellant claims the lower court erred in directing a verdict for Thomas. This contention is not directly answered either in the lower court's opinion, or in appellee's brief in the appellate court, although it was raised below in paragraph 7 of appellant's post trial motions.

■ Clawges was present when at least some of the coal was being loaded on the train, and he made some spot analyses which indicated to him that the coal did not meet the 12,300 B.T.U. specification, and he so informed the appellee's representatives. There was talk that coal of better quality would be added to raise the average to 12,300 B.T.U., but there is no evidence that this was ever done. Mrs. Thomas conceded that the coal shipped on the first half of the order was not meeting specifications. Those

portions of the evidence do indicate some reasonable question as to what was the precise quality of the coal, but there is no sufficient proof of the amount of deviation from the standard of 12,300 B.T.U.'s to justify appellant's imposition of a penalty under the formula set forth in the purchase order. As trial counsel recognized during the trial, proof of the amount of the deviation and penalty was dependent upon the analyses made in Baltimore after delivery.

On a motion for a directed verdict, the court should accept as true all facts and proper inferences which tend to support the contention of the party against whom the motion has been made and must reject all testimony and inferences to the contrary. *Correll v. Werner*, 293 Pa.Superior Ct. 88, 437 A.2d 1004 (1981); *Stephens v. Carrara*, 265 Pa.Superior Ct. 102, 401 A.2d 821 (1979); *Hogan v. Bryn Mawr Hospital*, 250 Pa.Superior Ct. 109, 378 A.2d 477 (1977). Without the admission of the analysis reports, Allegheny merely demonstrated that *some* of the coal did not comply to *some* degree. This was insufficient to allow the jury to decide whether the coal as a whole did not comply with the specifications. The jury could only offer conjecture as to the average B.T.U. content.

C. Admissibility of the analysis reports.

Foreston, the purchaser from appellant, employed Wiley & Co., Inc. to analyze the coal and submit reports to it. Those analyses and reports are contained in Defendant's Exhibits O, P, Q and R, and copies are attached to appellant's brief at pages 37–40. Judge Reilly ruled that the reports had not been properly authenticated and therefore refused to receive them into evidence. He ruled that without such evidence appellant had not successfully carried its burden of proof, and he directed a verdict for appellee. Appellant attempted to introduce copies of the reports in the testimony of Samuel William Wiley, Jr., "in charge of Wiley and Company since 1932." Wiley described the business of his company; testified that he had supervised the taking of samples of the coal from the railroad cars, and that other persons at Wiley and Company, otherwise not

identified, had performed the laboratory tests. No attempt was made to procure the testimony of the persons who performed the tests, or to explain their absence.

Appellant contends that the reports are admissible under the Uniform Business Records as Evidence Act, 42 Pa.C. S.A. § 6108. The Act provides in part:

> (b) General Rule.—A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition, or event, *and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.*

(Emphasis supplied).

After reviewing Wiley's testimony, and the testimony of a second witness for appellant, Judge Reilly concluded that the testimony raised a serious issue as to the trustworthiness or reliability of the report. The court expressed particular concern over the following points. The chemist remained unnamed and there was no explanation given for his or her absence resulting in Thomas being unable to cross-examine him or her on his or her qualifications or the testing. Nor was the report the original record of the analysis, but a compilation of other documents.

Whether a document should be admitted under the "business record" exception is within the discretionary power of the trial court provided such is exercised within the bounds of the Uniform Act. *In Re Estate of Indyk,* 488 Pa. 567, 413 A.2d 371 (1979); *In Re Wildoner,* 268 Pa.Superior Ct. 271, 407 A.2d 1351 (1979). In the current case, the unidentified chemist's analysis would have supported Allegheny's position, however in that the witness was not present, his testimony was hearsay and his analysis in his absence did not permit him to qualify as an expert. See *Jones Appeal,* 449 Pa. 543, 297 A.2d 117 (1972). We can find no abuse of the trial court's discretion as the lower court's ruling is in agreement with the vintage holding of

this court in *Coale Corp. v. Blue Ribbon Coal Co.*, 84 Pa.Superior Ct. 228 (1924), where this court held the hearsay statements of an unknown chemist was incompetent proof of the quality of the coal.

D. The addition of interest to the directed verdict.

Unless appellant succeeded in proving that the coal supplied to it was below the standard of 12,300 B.T.U.'s, or appellee proved it was above that standard, appellant owed appellee $14.25 for each ton delivered, a sum readily calculated on the facts admitted in this case.

■ Judge Reilly cited *Comn. to use Walters T.S. v. Nat. U.F.I. Co.*, 434 Pa. 235, 252 A.2d 593 (1969) and *Oxford Mfg. Co., Inc. v. Cliff House B. Corp.*, 224 Pa.Superior Ct. 387, 307 A.2d 343 (1973) to support his awarding interest on the amount due to Thomas. Such action was proper. *Walters T.S.*, supra, specifically permits a trial court to mold a jury verdict to include interest even though the question of interest had not been submitted to the jury. Nothing less can be permitted here where the court directs the very verdict to be molded.

Judgment affirmed.