504 A.2d 186

Mary GANSTER, Frances S. Cannon, Frank Janicki and
Catherine Janicki, his wife, Appellants,

v.

WESTERN PENNSYLVANIA WATER COMPANY, Appellee.

Superior Court of Pennsylvania.

Argued May 13, 1985.

Filed Dec. 13, 1985.

Reargument Denied Feb. 12, 1986.

John D. Hendricks, Pittsburgh, for appellants.

James F. Manley, Pittsburgh, for appellee.

Before SPAETH, President Judge, and ROWLEY and WIEAND, JJ.

WIEAND, Judge:

In this action to recover for damages allegedly caused to improved real estate by escaping water, the trial court allowed the defendant water company's risk manager to read from copies of reports in company records that a water sample had been collected, analyzed in a laboratory and found to be "not our water." In this appeal from a defense verdict, the appellant property owners contend that the ruling of the trial court which allowed this evidence was erroneous. We agree. Therefore, we reverse and remand for a new trial.

The property owners, Mary Ganster, Frances S. Cannon, and Frank and Catherine Janicki, brought suit against Western Pennsylvania Water Company to recover damage to improvements on their real estate allegedly caused by water escaping from mains along DeWalt Drive in Baldwin Township, Allegheny County. At trial, the property owners produced testimony that water had been observed bubbling through the road surface. Escaping water, they contended, had also flowed subsurface to their properties where it caused damage to the foundations of their homes. At trial, the property owners and the water company called expert witnesses who gave conflicting testimony regarding negligence and whether water escaping from mains in the street had caused the damages. The water company then called

its risk manager, Herman Kreuzer, who produced water company records to show that an employee had responded to a call to turn on the water at the Ganster home. The company's business records showed that when the water had been turned on at the curb, their employee had also gathered a sample of surface water on the property. This sample, according to the water company's records, had been taken to the lab for analysis. According to the trial record, the following then occurred:

Q  What were the results of the test.

    MR. HENDRICKS: I object, Your Honor, unless the individual who performed these tests is present to testify, further that there is no testimony of where this water sample was taken from at the house. That may have a great deal to do with what was found in the water. There is absolutely no evidence other than he took a water sample from house 409. I don't know if that means inside the house or around it or behind it.

    THE COURT: What do the records show, sir?

    THE WITNESS: It just indicates that a sample was taken at house 409.

    THE COURT: Is that all the record says?

    THE WITNESS: Yes.

    THE COURT: All right. Objection overruled. The test was taken. That's all.

BY MR. MANLEY:

Q  The record also indicates the sample was taken down to the lab, does it not?

A  Yes, the sample was taken from the home and delivered to the lab.

Q  And did you receive a lab—is this lab report the third page of Exhibit G?

A  Yes.

Q  What was the result of the test?

    MR. HENDRICKS: Again, Your Honor, I am going to object. The individual who did this test is not here. There is no foundation laid that Mr. Kreuzer is an expert in interpreting reports. There is no report here

other than what it states here. It doesn't state the foundation for it. Again it is testing water and again we don't know where it came from. Furthermore, the defendant did not supply me with the experts' reports regarding the water conditions.

THE COURT: Mr. Manley, what is your response?

MR. MANLEY: It was never asked for.

THE COURT: What is your response to his objection?

MR. MANLEY: If the Court please, these are records that the water company keeps in the regular course of business. They do this as a matter of routine. And the report is part of our records. The report is made at the time and the date indicated on the report.

THE COURT: What does the record show with respect to the results of the test?

MR. MANLEY: If I say that, Your Honor, then there would be objections.

I will show you.

THE COURT: All right. The Court views this as being part of the [business] records, an exeption [sic] to the hearsay rule. You have your exception, sir.

BY MR. MANLEY:

Q What was the result of the lab test, Mr. Kreuzer?

THE COURT: As shown on the records.

THE WITNESS: On July 26th, the lab report was submitted for 409 Pearce Road, not our water.

MR. MANLEY: Okay.

The Uniform Business Records as Evidence Act provides as follows:

A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of

information, method and time of preparation were such as to justify its admission.

42 Pa.C.S.A. § 6108(b). The Supreme Court, in *In re Estate of Indyk*, 488 Pa. 567, 413 A.2d 371 (1979), stated the purpose of the business records exception to the hearsay rule as follows:

"The general purpose of the Business Entry Statute was to enlarge the old common-law shopbook exception to the hearsay rule by eliminating the many illogical distinctions which had evolved during the period when the one-man type of business enterprise was the predominant dorm [sic] of business organization. Today, instead of a single shopkeeper who transacts and records the sale, there are a myriad of sales girls, department heads, bookkeepers, etc., etc., etc., who compile summaries and consolidate the records made by others. Quite often different individuals have personal knowledge of the various phases of a transaction so that no one individual has knowledge of the entire transaction. In addition, the frequent turnover of personnel often makes it impossible to identify the employee—if it were only one—who took part in the transaction. Under these circumstances, to require the entrant to have personal knowledge of the event recorded, and to require proof of the identity of the recorder, would exclude almost all evidence concerning the activities of large business organizations—a result diametrically opposed to the purpose and spirit of the [Uniform] Business Records as Evidence Act. (Footnote omitted)."

*Id.*, 488 Pa. at 571–572, 413 A.2d at 373, quoting *Fauceglia v. Harry*, 409 Pa. 155, 158–159, 185 A.2d 598, 600 (1962). The rule

is justified on grounds analogous to those underlying other exceptions to the hearsay rule. Unusual reliability is regarded as furnished by the fact that in practice regularly kept records have a high degree of accuracy (as compared to other memoranda). The very regularity and continuity of the records are calculated to train the re-

cordkeeper in habits of precision; if of a financial nature, the records are periodically checked by balance-striking and audits; and in actual experience the entire business of the nation and many other activities function in reliance upon records of this kind.

McCormick on Evidence § 306, at 872 (3rd ed. 1984).

■ To satisfy the requirements of the rule, a business record in the form of memoranda reports or data compilations must be made at or near the time of the events reflected in the records. "A determination as to whether the recording of the event is sufficiently contemporaneous with the event is left to the broad discretion of the trial court." *In re Estate of Indyk; supra* 488 Pa. at 572 n. 2, 413 A.2d at 373 n. 2. See: *Henderson v. Zubik,* 390 Pa. 521, 524, 136 A.2d 124, 126 (1957).

■ The records must also be kept in the course of a regularly conducted business, and it must be the regular practice of the business to keep records of the type offered into evidence. "In the regular course of business" includes entries made systematically and as part of a regular routine which requires the recording of events or occurrences, the reflection of transactions with others. These essentials must be established by testimony of the custodian or of another qualified witness. It is not essential for the admission of evidence under this rule, however, to produce either the person who made the entries in question or the custodian of the record at the time the entries were made. The witness need only possess adequate knowledge of the regularity of the record keeping process to qualify the records under the Act. *In re Estate of Indyk, supra* 488 Pa. at 573, 413 A.2d at 373–374.

■ Finally, it is essential that no lack of trustworthiness appear in the source of information or the method or circumstances of preparation. The factors to be weighed in evaluating the trustworthiness of business records include whether there was either motive or opportunity to prepare an inaccurate record, the period of delay prior to prepara-

tion of the record, the nature of the information recorded, the systematic checking, whether there was regularity and continuity in maintaining the records and whether the business relied on them. "In the case of records kept in the regular course of business the circumstantial guarantee of trustworthiness arises from the regularity with which they are kept." *Fauceglia v. Harry, supra* 409 Pa. at 160, 185 A.2d at 601.

■ The Act does not make relevant that which is irrelevant or make all business and professional records competent regardless of by whom, in what manner and for what purpose they were compiled or offered. *Haas v. Kasnot,* 371 Pa. 580, 586, 92 A.2d 171, 174 (1952); *Grogan v. Michael,* 349 Pa. 369, 373, 37 A.2d 715, 717 (1944); *Ingram v. City of Pittsburgh,* 346 Pa. 45, 48, 29 A.2d 32, 34 (1942); *Freedman v. Mutual Life Insurance Co. of New York,* 342 Pa. 404, 414, 21 A.2d 81, 86 (1941).

■ It was not necessary for Kreuzer, in this case, to have personal knowledge of the acts recorded in order to prove the authenticity of the company's records. "The business records exception to the hearsay rule was meant to allow for the situation where larger departments for recording business transactions make it virtually impossible to identify each person at each phase of the recording ... process." *Campbell v. Royal Indemnity Co. of New York,* 256 Pa.Super. 312, 320, 389 A.2d 1139, 1143 (1978). "Under these circumstances, to require the entrant to have personal knowledge of the event recorded, and to require proof of the identity of the recorder, would exclude almost all evidence concerning the activities of large business organizations—a result diametrically opposed to the purpose and spirit of the Uniform Business Records as Evidence Act." *Fauceglia v. Harry, supra* 409 Pa. at 159, 185 A.2d at 600.

■ "The purport of the Act is merely to require that the basic integrity of the record keeping is established. Where it can be shown that the entries were made with sufficient contemporaneousness to assure accuracy and that they

were made pursuant to the business practices and not influenced by the litigation in which they are being introduced, a sufficient indicia of reliability is provided to overcome their hearsay nature." *In re Estate of Indyk, supra* 488 Pa. at 572, 413 A.2d at 373. Kreuzer, who possessed adequate knowledge of the regularity of the record keeping process of the water company, testified that the records which the company sought to introduce were request forms which were compiled as a matter of course whenever a customer called in a request or a complaint. We conclude from this testimony that the request form indicating that plaintiff Mary Ganster had made a request to turn on the water at her house was properly admitted into evidence by the trial court to show the work done by the employee. The records could also be used to show that the employee who turned on the water had taken a sample of surface water from the property.

The report of the laboratory analysis of water collected by the water company employee, however, represented an employee's opinion that the water collected from the property was not Western Pennsylvania Water Company water. Kreuzer testified that the water company's laboratory had tested a sample of water from 409 Pearce Road and that the report showed that the water was not Western Pennsylvania's water. This was a conclusion drawn from a laboratory analysis. It raised, not for the first time, the question whether conclusions and opinions are admissible pursuant to the business records exception to the hearsay rule.

Most decisions considering the admissibility of opinions contained in business records have involved hospital or doctors' records. See, e.g.: *Commonwealth v. DiGiacomo*, 463 Pa. 449, 345 A.2d 605 (1975); *Fauceglia v. Harry*, *supra; Morris v. Moss*, 290 Pa.Super. 587, 435 A.2d 184 (1981); *In re Wildoner*, 268 Pa.Super. 271, 407 A.2d 1351 (1979); *Commonwealth v. Seville*, 266 Pa.Super. 587, 405 A.2d 1262 (1979); *Commonwealth v. McNaughton*, 252 Pa.Super. 302, 381 A.2d 929 (1977). Hospital records which satisfy the requirements of the Business Records Act are

admissible to show facts of hospitalization, treatment prescribed, and symptoms given. *Commonwealth v. DiGiacomo, supra* 463 Pa. at 455, 345 A.2d at 608; *Commonwealth v. McNaughton, supra* 252 Pa.Super. at 306, 381 A.2d at 931. However, a medical opinion contained in a hospital record and offered as expert testimony, as a general rule, is not admissible unless the doctor who prepared the report is available for in-court cross-examination regarding the accuracy, reliability, and veracity of his opinion.

> An opinion expressed in hospital records [were they to be admitted without the presence of the physician] is subject to no such searching inquiry as to accuracy, soundness, and veracity. Hence the danger in admitting them is very great. However admirable, whatever the character and reputation of the institution from which records come, to deny [the opposing party] the opportunity to test the correctness of the diagnosis and ascertain the qualifications of the assertor ... is to deny [the opposing party] a substantial right.

*Paxos v. Jarka Corp.*, 314 Pa. 148, 154, 171 A. 468, 471 (1934).

The most recent statement of the rule by the Supreme Court appears in *Commonwealth v. DiGiacomo, supra,* where the Court said:

> The law is clear that hospital records are admissible to show the fact of hospitalization, treatment prescribed, and symptoms given. Act of May 4, 1939, P.L. 42, No. 35, § 2, 28 P.S. § 91b; *Commonwealth v. Mobley,* 450 Pa. 431, [301] A.2d 622 (1973); *Platt v. John Hancock Mutual Life Insurance Co.,* 361 Pa. 652, 66 A.2d 266 (1949). Medical opinion contained in the records and proffered as expert testimony is not admissible however where the doctor is not available for cross-examination. See *Jones Appeal,* 449 Pa. 543, 297 A.2d 117 (1972). Here, appellant attempted to have the custodian of records testify as to the admitting diagnosis of the injuries sustained. Such testimony is in the nature of expert opinion testimony and accordingly was properly excluded.

See, generally, *McCormick, Handbook of the Law of Evidence,* 732 (2d ed. 1972).

*Id.* 463 Pa. at 455–456, 345 A.2d at 608. Concurring Opinions written by Justice Roberts and Justice Pomeroy suggested that the rule should be modified to allow hospital records in evidence to show diagnoses of injuries in limited situations as, perhaps, where all physicians would agree to the diagnosis and there would be no real dispute regarding the same. This view was not adopted by a majority of the Court, however, and is not now the law in this Commonwealth.

The decisions of the Superior Court have not always been consistent. In *Myers v. Genis,* 235 Pa.Super. 531, 344 A.2d 691 (1975), the Court, although acknowledging that Pennsylvania decisions excluded medical records containing diagnoses or medical opinions, relied upon federal practice to hold that records of a deceased physician were admissible in evidence to show his medical opinion. Because this decision preceded and was impliedly overruled by the Supreme Court in *DiGiacomo,* it cannot be relied upon to support the trial court's ruling in the instant case.

Later, a majority of the Superior Court distinguished *DiGiacomo.* In *Commonwealth v. Campbell,* 244 Pa.Super. 505, 368 A.2d 1299 (1976), the Court held that hospital records were admissible to show that spermatoza was present in the vaginal tract of a criminal prosecutrix at the time she was examined. The Court concluded in support of its holding that the presence of spermatoza was a fact and not merely a medical opinion. *Id.,* 244 Pa.Superior Ct. at 510, 368 A.2d at 1301. Judges Spaeth and Hoffman dissented on grounds that *DiGiacomo* was controlling and required exclusion of the evidence.

In *Commonwealth v. McNaughton, supra,* Judge Hoffman's opinion for the court, with two judges concurring and one judge concurring specially, followed the general rule and held that "medical opinion contained in [hospital] reports and offered as expert testimony is not admissible unless the doctor who prepared the report is available for

in-court cross-examination regarding the accuracy, reliability, and veracity of his opinion." *Id.* 252 Pa.Super. at 307, 381 A.2d at 931.

Finally, in *Emerick v. Carson*, 325 Pa.Super. 308, 314, 472 A.2d 1133, 1136 (1984), allocatur denied, a panel of the Superior Court held, without reference to prior decisions, that where blood had been drawn at a community hospital and routinely sent to another hospital for analysis and the analysis report had been incorporated into the community hospital's regular records, the analysis was admissible upon authentication by the community hospital's medical records librarian. Although this decision appears at first blush to be in conflict with *DiGiacomo*, it may be that it can be distinguished as representing the recordation of fact in much the same manner as in *Commonwealth v. Campbell*, *supra*. In any event, we find *Emerick* not controlling of our decision in this case.

■ For present purposes, we accept the rule, as stated in *DiGiacomo*, that testimony in the nature of expert opinion is not admissible as a business record unless the expert rendering the opinion is available for cross-examination. "Cross-examination," it has been said, "is a vital and fundamental part of a fair trial." *Commonwealth v. Shirey*, 333 Pa.Super. 85, 151, 481 A.2d 1314, 1350 (1984). Although the right of cross-examination is not absolute and although hearsay evidence may be received upon proof of exceptional circumstances, including factual evidence received under the business records in evidence exception (*Commonwealth v. Scatena*, 332 Pa.Super. 415, 438, 481 A.2d 855, 867 (1984)), cross-examination is particularly important where it is the only means for testing the reliability of an opinion regarding disputed facts.

■ In the instant case, whether appellants' damages had been caused by water escaping from appellee's water lines was an important fact. Appellants were not entitled to recover damages unless they showed, by a preponderance of the evidence, that their damages had been caused

by water emanating from the water company's lines. To permit in evidence the conclusion appearing in a copy of a water company record that it's "not our water," without identifying the person rendering the opinion or subjecting him or her to cross-examination, was under the circumstances of this case an abuse of discretion and error. The risk manager who read the report had no personal knowledge of the statement contained in the report. The result was that someone's opinion that it's "not our water" was "totally insulated from any challenge regarding its veracity and reliability." See: *Commonwealth v. McNaughton, supra* 252 Pa.Super. at 307, 381 A.2d at 932. Such an opinion should not have been received in evidence.

Reversed and remanded for a new trial. Jurisdiction is not retained.

SPAETH, President Judge, concurs in the result.