532 A.2d 28

COMMONWEALTH of Pennsylvania

v.

Robert JACKSON, Appellant.

Superior Court of Pennsylvania.

Submitted July 27, 1987.

Filed Oct. 9, 1987.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Donna G. Zucker, Assistant District Attorney, Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and HOFFMAN and HESTER, JJ.

CIRILLO, President Judge:

Appellant Robert Jackson takes this appeal from a judgment of sentence imposed by the Philadelphia County Court of Common Pleas following a contempt hearing on two citations of criminal contempt. The first citation was imposed for disruptive conduct during *voir dire* of the jury preceding appellant's trial on a charge of robbery. The second citation was imposed for a remark made during the contempt hearing itself. We vacate the judgment of sentence and remand for a rehearing.

Appellant contends that the trial court erred in twice holding him guilty of contempt: first, because the evidence was insufficient to support the conclusion that appellant's collapse in the courtroom during the jury selection was feigned; and second, because appellant's remark during the contempt hearing did not constitute misconduct with intent to obstruct the proceedings and did not cause a significant disruption. In addition, appellant claims that the procedures employed by the trial court in establishing contempt violated due process.

On February 20, 1987, appellant appeared before Judge Stanley Kubacki, the trial judge, on a motion to suppress evidence following appellant's arrest for robbery and other related charges. The motion was denied. The court appointed public defender Edson Bostic to represent appellant. During *voir dire* appellant informed Judge Kubacki that he wished to dismiss trial counsel and to hire a private attorney. The judge denied the request. Appellant then began to comment aloud, objecting to the fact that the trial judge ordered the trial to begin despite the fact that two defense witnesses were not present. He also stated that he wanted to address the jury. During a court recess, and after some discussion, appellant agreed to keep quiet.

Following another court recess, near the completion of jury selection, Judge Kubacki asked, "Does anybody feel he couldn't give this defendant or the Commonwealth a fair trial?" Appellant answered, "Me, your Honor." The judge responded, "I want you to keep quiet."

During the next recess trial counsel informed the court that appellant had been on "acid" in the past and that he was having a "flashback" and wanted to be excused or examined by a doctor. The court denied the request. After the twenty veniremen had been selected and were seated in the jury box, appellant suddenly fell out of his chair head first and lay on his back, apparently unconscious. The jury was excused. The court crier took appellant's pulse and found it to be normal. The trial judge stated that appellant was "faking" and refused to order the rescue squad. However, the rescue squad did arrive and, after finding that appellant's vital signs were "good," refused to conclude that appellant had had a "fit," but suggested that a medical doctor must make such a determination. One attendant did comment, in answer to the judge's inquiry, that appellant "was probably faking."

Trial counsel motioned for a new trial and requested a new jury. The trial judge responded, "We are going to get a new jury, yes, probably tomorrow. So keep yourself available." Sheriffs McGuire and Levini accompanied appellant to the hospital. It appears from appellant's brief that the medical report prepared by the physician who examined appellant at the hospital, indicated that appellant had suffered a "syncopal episode secondary to possible seizure disorder," that appellant had previously taken seizure medication, and that at the time he was taken to the hospital by the sheriffs, he was given a drug known as dilantin. At the time appellant was discharged from the hospital, the treating physician prescribed continuing daily doses of this drug.

The following day, February 26, 1987, when appellant and trial counsel appeared in court, certain papers were being marked as Commonwealth's exhibit C–1. These documents

comprised the treating physician's report which the sheriffs had transported from the hospital to the courtroom. Trial counsel remarked, "Can I ask the purpose of marking these documents? I don't know what proceeding we are having at this point."[1] The following discussion took place:

THE COURT: We have learned that the stories that he told us yesterday were not true. The stories that he told the people, the doctors at Giuffre [hospital] were not true and there are many conflicts. This Court is of the firm belief that all this was contrived. It was an act yesterday. He had tried everything to delay the start of this trial. And in desperation, he did what he did in order to delay the administration of justice. And his act was a contemptuous one yesterday.

THE DEFENDANT: That is not true, Your Honor.

THE COURT: I am holding him in contempt.

MR. BOSTIC: May I? I think I have specific objections to the medical records at this point in time. First of all, we would object to any documents being submitted here without the custodian of records, without the person who prepared these documents....

. . . .

without the custodian of records these matters are not properly before the Court and should be excluded from any evidence in any type of hearing whatsoever. The defendant had a constitutional right to—

THE COURT: Okay, please, spare me these constitutional arguments.

The Commonwealth argued that since the medical reports were prepared in the hospital in the presence of the sheriffs, and delivered by the sheriffs to the court, the chain of custody was intact. The trial court agreed and opined that the fact that the two sheriffs were present when the report was being prepared qualified them both as witnesses that

1. Trial counsel also objected to the admission of the rescue service report and to a written telephone message taken by the court crier from the hospital. These documents were not admitted into evidence.

the documents were prepared in the normal course of a business activity and also as "custodians of record." The controversy continued until appellant stated:

THE DEFENDANT: Now you are fucking with my head. There is not one testimony that they gave when they fooled with my head. You are saying contempt, Your Honor, but not one little thing got my head at all.

THE COURT: You are in contempt.

THE DEFENDANT: They gave me no G.J.K. or E.G.G. was taken of my head. He says, sure, that is on him.

THE COURT: Come on up here a moment, please. I have an obligation to act on a contempt citation immediately.

. . . .

MR. BOSTIC: I am entitled to speak to find out what we are doing here at this point. Is the Court saying that Mr. Jackson is in contempt this morning for his actions in the courtroom this morning?

THE COURT: Yes.

MR. BOSTIC: Or is the Court saying that Mr. Jackson is in contempt for what occurred—

THE COURT: I told him to keep quiet.

MR. BOSTIC: —as to yesterday based on these records?

THE COURT: Both.

MR. BOSTIC: Clearly, as to the medical records, Mr. Jackson has not had a fair hearing as to any contempt proceedings. These documents are not anything but hearsay. . . . If I as a member of the Bar Association of Philadelphia, go to prison—

THE COURT: Please, I have heard the argument. No more. I am going to hold you in contempt.

DEFENDANT: That is how you have been doing this.

THE COURT: No more, I heard your argument.

MR. BOSTIC: I am entitled to make argument to what the Court said.

THE COURT: You have made your argument, you said they are not custodians and I said they are.

MR. BOSTIC: The Commonwealth's attorney made a statement because they were present and they are. I am telling the Court if I was present, that did not by being present make me a custodian of records and the Court is aware of that.

THE COURT: For yesterday, I am sentencing you to six months in jail for contempt. To be followed by an additional six months for your conduct here this morning.

MR. BOSTIC: Your Honor, the defense has not had an opportunity to put on any testimony at this hearing. The Commonwealth has presented the evidence and we have not had an opportunity to present any testimony on behalf of Mr. Jackson. The Court is denying Mr. Jackson at this point of his due process rights this morning.

THE COURT: I am ruling, no more.

MR. BOSTIC: I am entitled to call witnesses.

THE COURT: No more. I am holding you in contempt and you will be committed to the House of Correction for thirty days, beginning the 15th of May.

THE DEFENDANT: Everybody here is in contempt.

THE COURT: Unless you cleanse yourself by paying a fine of $100 and it must be paid.

THE DEFENDANT: Everybody is in contempt, right?

MR. BOSTIC: If I may ask the Court that I have counsel and have a hearing on the order of contempt by this Court. I think I am entitled to that.

After a short recess, the trial judge withdrew the contempt citation against trial counsel and set a date for a new trial. This appeal followed.

■ We have held that "in considering an appeal from a contempt order, we place great reliance on the discretion of the trial judge." *Commonwealth v. Worthy,* 354 Pa.Super. 454, 456, 512 A.2d 39, 40 (1986) (citing *In re Grand Jury, April Term 1977, Wayne County,* 251 Pa.Super. 43, 379 A.2d 323 (1977)). "Each court is the exclusive judge of contempts against its process, and on appeal its actions will be reversed only when a plain abuse of discretion occurs."

*Neshaminy Water Resources Auth. v. Del–Aware Untd. Inc.,* 332 Pa.Super. 461, 469, 481 A.2d 879, 883 (1984). In cases of direct criminal contempt, that is, where the contumacious act is committed in the presence of the court and disrupts the administration of justice, *Commonwealth v. Mayberry,* 459 Pa. 91, 105, 327 A.2d 86, 93 (1974), an appellate court is confined to an examination of the record to determine if the facts support the trial court's decision. 42 Pa.C.S. § 4132(3); *Appeal of Levine,* 372 Pa. 612, 620, 95 A.2d 222, 226 (1953), *cert. denied, Re Levine,* 346 U.S. 858, 74 S.Ct. 72, 98 L.Ed. 971 (1952). However, the trial court's discretion is not unbridled. It is axiomatic that in direct criminal contempt cases, "to be sufficient to support appellant's conviction, the evidence had to show, beyond a reasonable doubt, (citation omitted) appellant's misconduct in the presence of the court; his intent to obstruct the administration of justice; and actual obstruction." *Commonwealth v. Falkenhan,* 306 Pa.Super. 330, 338–339, 452 A.2d 750, 755 (1982), *cert denied* and *appeal dismissed, Falkenhan v. Pennsylvania,* 464 U.S. 803, 104 S.Ct. 49, 78 L.Ed.2d 69 (1983) (citations omitted).

■ In addition, constitutional due process requires that the contemnor "should have reasonable notice of the specific charges and opportunity to be heard in his own behalf." *Mayberry, supra* 459 Pa. at 105, 327 A.2d at 93 (quoting *Taylor v. Hayes,* 418 U.S. 488, 499, 94 S.Ct. 2697, 2703, 41 L.Ed.2d 897 (1974)).

■ It is clear from the record that the trial judge could not be certain that appellant's fall during *voir dire* constituted contumacious behavior, however provoking appellant's behavior had been up to that moment. There was, therefore, no clear case to be made for a charge of direct criminal contempt at that point given the fact that the trial judge based his subsequent citation of contempt solely on the act in issue. It also appears from the record that appellant had no prior notice that a contempt hearing was going to be held the next morning. Appellant, therefore,

had no opportunity to prepare a defense to explain his action on the previous day.

Although it is unclear from the record, it appears that the Commonwealth secured the report of the treating physician from the sheriffs who transported it from the hospital after appellant was dismissed. No copy had been made for appellant at the time he arrived at court. Appellant was permitted to look at the original report and a copy was included in the record. However, the handwriting is virtually illegible and it is difficult to understand how trial counsel could have interpreted its significance on a moment's notice and without consultation with a medical expert. It is apparent that the trial judge meant to rely on this document as proof that appellant had feigned unconsciousness during jury selection the previous day. However, our review of the record fails to disclose by what means the trial judge interpreted the document as proof that appellant was guilty of contempt.

The Commonwealth insists that the report "did not establish either that the defendant was ill or that he was not." It argues that the act of falling from the chair was enough to prove contumacious behavior. We cannot agree with this conclusion. We have held that "[t]o sustain a summary adjudication of criminal contempt, the acting court must have before it proof of every element of the offense beyond a reasonable doubt." *Kinter v. Kinter*, 348 Pa.Super. 27, 29, 501 A.2d 281, 282 (1985) (citing *Matter of Campolongo* 495, Pa. 627, 631, 435 A.2d at 581, 583 (1981)). There is no proof before the court that appellant was either conscious or unconscious at the moment he fell. There are no facts before us upon which we can base a judgment that appellant intended to disrupt court procedure. *See Smith v. Mason*, 328 Pa.Super. 314, 318, 476 A.2d 1347, 1349 (1984) (holding that it must be proved, *inter alia,* that the alleged contemnor had an intent to obstruct the proceedings in order to establish criminal contempt in the presence of the court).

The trial judge, having read the report of the treating physician, began the hearing by summarizing his conclusions and found appellant in contempt specifically for having feigned unconsciousness during the jury selection process. The trial judge then admitted the report into evidence, over objection, as an exception to the hearsay rule pursuant to the Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108.

"Whether a document should be admitted under the 'business record' exception is within the discretionary power of the trial judge provided such is exercised within the bounds of the Uniform Act." *Thomas v. Allegheny & Eastern Coal Co.*, 309 Pa.Super. 333, 340, 455 A.2d 637, 640 (1982) (citing *In Re Estate of Indyk*, 488 Pa. 567, 571, 413 A.2d 371, 373 (1979)).

In interpreting the Act, we have held that "a medical opinion contained in a hospital record and offered as expert testimony, as a general rule, is not admissible *unless the doctor who prepared the report is available for in-court cross-examination* regarding the accuracy, reliability, and veracity of his opinion." *Ganster v. Western Pennsylvania Water Co.*, 349 Pa.Super. 561, 571, 504 A.2d 186, 191 (1985) (emphasis added). "[C]ross examination is particularly important where it is the only means for testing the reliability of an opinion regarding disputed facts." *Ganster, supra*, 349 Pa.Superior Ct. at 571, 504 A.2d at 191. Even were we to accept the trial judge's conclusion that the sheriffs were "custodians" of the records, under *Ganster* their testimony was excludable. *See generally McCormick, Handbook of the Law of Evidence*, 732 (2d ed. 1972). *See also Commonwealth v. DiGiacomo*, 463 Pa. 449, 345 A.2d 605 (1975) (testimony in the nature of an expert opinion is not admissible as a business record unless the expert rendering the opinion is available for cross-examination); *Jones Appeal*, 449 Pa. 543, 297 A.2d 117 (1972) (same).

We hold that due process was violated when appellant was not notified that a contempt proceeding was to be

held the following day. As a result, appellant had no opportunity to prepare a defense. In addition, the trial court erred when it admitted the physician's report without permitting appellant to know in advance the precise grounds on which the charge was based and to cross-examine the treating physician who prepared the medical report. Even if we were to find that the document was properly admitted, the trial judge made no findings of fact relative to the hospital diagnosis upon which we could have based our review and, as a result, abused its discretion in imposing a summary conviction. We conclude that the record before us is insufficient to. support a finding of contempt during *voir dire.*

Since we have found that the contempt proceeding was invalid under the law, we are persuaded that the second citation of contempt cannot stand.

Judgment of sentence vacated. Jurisdiction is relinquished.