STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. HOWARD AULD, PLAINTIFF IN ERROR.

Argued October 15, 1946—Decided February 3, 1947.

For the plaintiff in error, *Rocco Palese* (*Carl Kisselman,* of counsel).

For the defendant in error, *Gene R. Mariano,* Prosecutor of the Pleas.

The opinion of the court was delivered by

Colie, J. Howard Auld was indicted, tried, found guilty and sentenced to death for the murder of one Margaret McDade. The case is before this court on a bill of exceptions and on the entire record. *R. S.* 2:195–14 and 16. The theory of the state's case was that the deceased was killed by Auld while committing or attempting to commit rape and hence was murder. *R. S.* 2:138–1. Rape is having carnal knowledge of a woman forcibly against her will.

The evidence disclosed that on August 14th, 1945, during a celebration of V-J Day, Auld met the deceased in Dellmawr, Camden County; that together they left the scene of the celebration to take a walk, during the course of which he carried the deceased into the bushes and had, or attempted to have, intercourse. Deceased "hollered" and scratched, whereupon Auld struck and choked her into insensibility. Thereafter, he stripped her body, carried it to a pumping station nearby and dropped it down a cistern. Five days later, some boys while playing about, raised the iron lid, saw the body and reported it to the authorities. The defense was that the intercourse was voluntary upon the part of the deceased and further that plaintiff in error was insane.

The assignments of error and specifications of causes for reversal are numerous but are presented in the brief of plaintiff in error under twelve points.

Points I and II allege error in the refusal of the trial court to charge the jury with respect to their right in case of a verdict of murder in the first degree to recommend imprisonment at hard labor for life. The statute *R. S.* 2:138-4 provides: "Every person convicted of murder in the first degree, his aiders, abettors, counselors and procurers, shall suffer death unless the jury shall by its verdict, and as a part thereof, upon and after the consideration of all the evidence, recommend imprisonment at hard labor for life, in which case this and no greater punishment shall be imposed." Requests to charge numbers 5, 6, 21 and 34, the court declined to charge. The sixth request was in the words of the statute. It reads:

"6. Every person convicted of murder in the first degree, shall suffer death unless the jury shall, by their verdict and as part thereof, upon and after the consideration of all the evidence, recommend imprisonment at hard labor for life, in which case this and no greater punishment shall be imposed."

A trial court is not required to instruct the jury in the precise words of counsel asking the instruction, *Gardner* v. *State*, 55 *N. J. L.* 17; *affirmed,* 55 *Id.* 652, but when a request to charge calls for a correct legal principle, is applicable to the testimony, and is clearly material, the defendant is

entitled to have it distinctly charged. *Stale* v. *DeGeralmo,* 83 *Id.* 135. In its brief the state does not, nor could it in reason, contend that plaintiff in error was not entitled to a clear statement of the subject-matter of the statute but rests on the argument that "the trial court did, in substance, charge the jury to consider all of the evidence in arriving at any of the five possible verdicts, the fourth one being that of guilty of murder in the first degree with a recommendation of imprisonment at hard labor for life." Our examination of the entire charge fails to disclose that the subject-matter of request number 6 was charged at all and we find that the omission so to do was error requiring a reversal of the judgment of conviction.

We now proceed to a discussion of such other matters as may assist the court in a retrial.

Point III challenges the propriety of the trial court's denial of a motion to strike a part of the testimony of a Dr. Read who made a *post mortem* examination of the deceased. In detailing his findings as a result of the *post mortem* examination, he said:

"Scratch marks were noted on the inner aspect of her right thigh, just below the external genitalia, or her private parts. It was a contusion, that is, a bruise, of the left side of her private parts, and a small tear of the right side of her private parts. There was also a tear with recent hemorrhage noted in the hymen, that is, the membrane which is inside the opening of the genital tract."

The witness then went into his diagnosis and concluded with the statement: "The signs of trauma about the external genitalia make it seem most probable that the woman had been raped." At this point counsel for plaintiff in error asked that the word "raped" be stricken from the record. The record then discloses the following:

"By the court:

"*Q.* Is that the opinion you formed from your examination, doctor?

"*A.* If your Honor please, I think I should have worded it, 'It seems most probable that the woman had been raped or rape had been attempted.' That must be my opinion

because of the very definite and rather severe injury to her private parts.

"Mr. Palese: I would like to ask the doctor one question.

"The court: Yes.

"By Mr. Palese:

"Q. Doctor, what is rape?

"A. Well, you know the definition legally better than I do.

"Q. What is rape, doctor?

"A. As I understand rape, it is the attempted intercourse in which at least the male member must be introduced between the vulva. Whether there is actual completion or not I think is not necessary.

"Q. Is there any difference, doctor, between carnal abuse or carnal knowledge of a female and rape?

"A. It must be against her will.

"Q. How do you know it was against this female's wishes and will?

"A. It is only due to my definition of the injuries.

"Mr. Palese: I ask that it be stricken from the record.

"The court: I will deny the motion."

The precise question is whether Dr. Read, a licensed physician and pathologist in charge of the laboratory at Cooper Hospital in Camden might properly testify, as he did, "that the woman had been raped." Having qualified as an expert in the field of pathology there can be no question as to the propriety of the doctor stating his opinion, based upon the autopsy, that there had been force employed in the intercourse or attempted intercourse. The scratch marks on the inner aspect of the thigh coupled with the contusion and tear near the genitalia to a trained physician having peculiar knowledge of the human body would clearly warrant an opinion that force had been employed. When, however, he used the word "raped" he thereby imported into his answer a new element, namely, the state of mind of the deceased. The term "rape" includes two distinct elements: force and unwillingness. Whether the act was against the will of deceased was a fact which the jury in the exercise of ordinary intelligence were capable of deciding for themselves. No special skill or training was needful to draw this inference and that

being so, we think that the more prudent action would have been to grant the motion to strike the testimony.

The last point to be discussed concerns the admission in evidence of a photostatic copy of the service record of plaintiff in error. Plaintiff in error while testifying in his own behalf stated that in April, 1943, he spent only three days in confinement as a result of a conviction of desertion by a general court martial. On rebuttal, the state offered in evidence a photostatic copy of the service record. Joseph J. Fitzgerald, Administrative Assistant of the Director of the Records Division of the Adjutant General's Office, War Department, testified that under War Department regulations the original records could not be left with the court. He also identified the copy as a photostat of the original, and it was then admitted in evidence over objection. The question of the admissibility of a service record seems never to have been before the courts in this state. Under the strict rule of the common law, it would perhaps have been ruled out in the absence of the persons who made the entries. We hold that a photostatic copy of a service record certified as correct under oath by a person having lawful custody of the original is evidential and our reason is nowhere stated more succinctly than in section 1675a of *Wigmore on Evidence*. It reads:

"A record of service in army, navy or civil office, made pursuant to duty imposed by custom or statute is admissible, on principle. In the first place, it is virtually no more than a certified copy, in summary, of the regular record of service kept in the department; the record would be admissible on the principle of Sec. 1639, *ante* (wherever there is a duty to record official doings, the record is admissible) and the certified copy on that of Sec. 1677, *post* (the lawful custodian of a public record has, by implication of his office, and without express order, an authority to certify copies). In the next place, it is made for the specific purpose of being exhibited and used; and to shut off its use in courts is to defeat its purpose in part. In the third place, to call for anything else in lieu of it is impracticable; for all the officers who shared in making the record cannot possibly be had as witnesses; and the chief of a Federal records-bureau is vir-

tually inaccessible for *'viva voce'* testimony; moreover, he personally knows nothing beyond the record. To exclude the certificate is practically to exclude all evidence on the subject." (Parentheses ours.)

We have examined the other points advanced by plaintiff in error for reversal and deem comment thereon unnecessary.

The judgment of conviction is reversed, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Parker, Bodine,. Donges, Heher, Perskie, Colie, Wachenfeld, Eastwood, Wells, Rafferty, Dill, Freund, McGeehan, McLean, JJ. 16.