Fauceglia *v.* Harry, Appellant.

Argued September 26, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ.

*George Hardy Rowley*, with him *Voorhies, Dilley, Keck & Rowley*, for appellant.

*Donald R. McKay*, with him *Martin E. Cusick*, and *Wiesen, Cusick, Madden, Joyce, Acker and McKay*, for appellees.

OPINION BY MR. JUSTICE COHEN, November 13, 1962:

Appellees, Edward Fauceglia and Florence Evelyn Fauceglia, his wife, brought an action of trespass for personal injuries allegedly suffered by the husband as a result of a collision with appellant's vehicle.

As a result of the accident, Fauceglia claimed he suffered back and neck pains as well as headaches. On cross-examination he denied having any trouble with his back or with headaches prior to the accident of sufficient severity to require medical treatment. He specifically stated that he consulted no physician while in the service regarding headaches or backaches, and that he never had his back X-rayed before the accident.

Appellant introduced in evidence certain excerpts from appellee's army medical record which were produced and identified by an attorney employed by the

Veterans' Administration. He testified that, under Veterans' Administration regulations, he was the custodian of its records for the purpose of appearing in court. He further testified that the army medical record of appellee was a part of the Veterans' Administration records. He stated that the entries on forms 52-A and 8-116 were made by members of the dispensary who would be either the sergeant in charge or the medical officer, after the subject had been examined. Based upon his personal experience, as well as the policy of the Veterans' Administration in accepting such records, he stated that the entries had been made by a medical officer.

Although the entire record was offered in evidence, the lower court excluded all matters of medical opinion and permitted the introduction of only such entries as could have been within the knowledge of a layman. The portions of the record admitted were as follows:

"January 3, 1945. Backache. X-ray of lumbosacral spine.

"March 8, 1945. Now headache, also backache.

"April 9, 1945. Hurt back on obstacle course last week. It has been getting worse. . . . X-ray taken on 9 April, '45."

Following a verdict for appellant, appellees moved for a new trial and assigned the admission of these excerpts from Fauceglia's army medical record as error. The court below, relying heavily on *Hagopian v. Eskandarian*, 396 Pa. 401, 153 A. 2d 897 (1959), granted a new trial.

The issue before us turns on the narrow evidentiary question of whether certain army infirmary slips are admissible as exceptions to the hearsay rule under either the Uniform Business Records as Evidence Act of May 4, 1939, P. L. 42, No. 35, §§1-4, 28 P.S. §91a-d, or the Federal Official Records Act of May 24, 1951, P. L. 393, §§1-8, 28 P.S. §§121-128. Appellees contend

that the army medical records are inadmissible because the identity of the individual who made these records has not been definitely established. They also contend that the general evidential prerequisite of personal knowledge has not been satisfied since there is no direct proof that the maker of the record had personal knowledge of the event recorded. We reject these contentions and conclude that the records are admissible under either act.

The Uniform Business Records as Evidence Act states: "A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." Act of 1939, May 4, P. L. 42, No. 35, §2, 28 P.S. §91b.[1]

The general purpose of the Business Entry Statute was to enlarge the old common-law shopbook exception to the hearsay rule by eliminating the many illogical distinctions which had evolved during the period when the one-man type of business enterprise was the predominant form of business organization.[2] Today, instead of a single shopkeeper who transacts and records the sale, there are a myriad of sales girls, department heads, bookkeepers, etc., etc., etc., who compile summaries and consolidate the records made by others. Quite often different individuals have personal knowledge of the various phases of a transaction so that no

---

[1] The act also enlarged the definition of the term "business" to include hospitals. Act of May 4, 1939, P. L. 42, No. 35, §1, 28 P.S. §91a. *Platt v. John Hancock Mutual Life Insurance Company*, 361 Pa. 652, 66 A. 2d 266 (1949).

[2] See Commissioners' Prefatory Note, 9A U.L.A. 297 (1957); 5 Wigmore, Evidence, §1530a (3d ed. 1940).

one individual has knowledge of the entire transaction. In addition, the frequent turnover of personnel often makes it impossible to identify the employee—if it were only one—who took part in the transaction. Under these circumstances, to require the entrant to have personal knowledge of the event recorded, and to require proof of the identity of the recorder, would exclude almost all evidence concerning the activities of large business organizations[3]—a result diametrically opposed to the purpose and spirit of the Uniform Business Records as Evidence Act.

In *Panama Canal Company v. Stockard & Company*, 391 Pa. 374, 381-82, 137 A. 2d 793, 798 (1958), we indicated the necessity for admitting business records where the recorder did not have personal knowledge and where those who did have personal knowledge were not identified when we said: " '. . . the . . . [checkers] have in many cases changed and the former ones cannot be found; in the next place, it cannot always be ascertained accurately which . . . [checker] was concerned in each of the transactions represented by hundreds of entries; in the third place, even if they could be ascertained, the production of the scores of . . . [checkers], to attend court and identify in tedious succession the detailed items of transactions would interrupt and derange the work of the . . . [carrier], and the evidence would usually be obtained at a cost practically prohibitory; and finally, the memory of such persons, when summoned, would afford little real aid.' 5 Wigmore, Evidence §1530 . . . ." Therefore, as long as someone in the organization has personally observed the event recorded, the evidence should be admitted.

In the instant case the custodian testified that the entries were made by either the sergeant in charge or

---

[3] 5 Wigmore, Evidence, §1530 at 378 (3d ed. 1940) ; McCormick, Evidence 602 (1954).

the medical officer after the examination had taken place. When questioned further, the custodian testified that from his personal experience the entries had been made by the medical officer. Surely one of these individuals must have had knowledge that the appellee complained of neck and back pains. As to the personal knowledge that an X-ray had been taken, again the only reasonable inference is that someone in the hospital organization had personal knowledge of that event. It is extremely unlikely that entries made on the standard form in a regular fashion pursuant to army regulations had no basis in fact. Hence, we conclude that the records are admissible under the Uniform Business Records as Evidence Act.

Even assuming arguendo that there is not sufficient proof of personal knowledge under the Uniform Business Records as Evidence Act, then the entries are admissible under the Federal Official Records Act. Section 1 of this act states that "[a] book of records regularly kept by any public officer of the United States, when acting under any law or regulation or other authority, is admissible to evidence any matter recorded therein and pertaining to the duties of the office." Act of May 24, 1951, P. L. 393, §1, 28 P.S. §121.

Every exception to the hearsay rule is based upon (1) the necessity for such evidence, and (2) the circumstantial probability of its trustworthiness. 5 Wigmore, Evidence, §1420 (3d ed. 1940). In the case of records kept in the regular course of business the circumstantial guarantee of trustworthiness arises from the regularity with which they are kept. In the case of official records the element of trustworthiness exists for an entirely different reason—the existence of an official duty. 5 Wigmore, Evidence, §1632 at 514 (3d ed. 1940).

In the instant case the custodian testified that the records were made by either the medical officer or the sergeant in charge on the standard form. The fact that

the record was made by a federal officer in the performance of his official duties is not controverted. The only question is whether it is necessary to establish the identity of the persons who heard appellee complain of back and neck pains, and who observed the taking of the X-ray.

Although it is a basic principle of evidence that a witness's testimony must be based upon personal knowledge, in the case of official records the courts have not required stringent proof of this element. 5 Wigmore, Evidence, §1636 et seq. (3d ed. 1940). Thus, in *United States v. Ward*, 173 F. 2d 628, 629-30 (2d cir. 1949), the court stated in regard to selective service records that: "The main objection to the admission of these records is that the witness did not make the records and did not know when or by whom these particular records were made. . . . [T]o the extent the entries were hearsay, they were admissible as 'official statements' made in the course of the entrants' official duties as employees of United States." Particularly where military records are offered in evidence, courts have not been very concerned with proof of the source of the information nor of the identity of the maker. 5 Wigmore, Evidence, §1641, §1675a (3d ed. 1940).

Aside from the circumstantial guarantee of trustworthiness which army medical records bear, there are compelling reasons of necessity for admitting them. Because of the passage of time and the constant turnover of military personnel it is often impossible—as in this case—to definitely identify the maker of the record. Further, the custodian who authenticates these records cannot testify with certainty as to what individual in the military organization had personal knowledge of the event recorded. He can only testify from his experience as to what probably happened. He cannot, of course, testify as to what actually happened. *State v. Auld,* 135 N.J.L. 293, 51 A. 2d 215 (1947). We

therefore conclude that the testimony of the custodian describing the manner in which these records were prepared is sufficiently definite to admit these records under the Federal Official Records Act.

The court below granted a new trial solely on the basis of some confusing language contained in *Hagopian v. Eskandarian,* 396 Pa. 401, 153 A. 2d 897 (1959). In that case the court held that hospital records containing *medical opinions* were properly excluded where there was no assurance that they were approved by qualified physicians. In *Hagopian* we cited *Paxos v. Jarka Corporation,* 314 Pa. 148, 171 Atl. 468 (1934), which is the case most often cited on the subject of admission of hospital records. In *Paxos* the court stated that the records must be supported by *"knowledge* of the person responsible for the statements."[4] At the time of the *Paxos* opinion, hospital records were treated very circumspectly by the courts.[5] This wariness resulted from the fear that medical opinions would be admitted in evidence without testing the qualifications of the extra-judicial declarant.[6]

Looking at the problem before us we find that the questions which troubled the court in *Paxos* and *Hagopian* are not present here. The entries introduced in evidence were only offered to prove that appellee came to the military hospital to complain about back and neck pains and that he also had an X-ray taken. These records were admitted in evidence for the purpose of proving that appellee complained of pains—not that he was in fact suffering from them. We are dealing

---

[4] 314 Pa. 148, 153, 171 Atl. 468, 470 (1934).

[5] See Notes, 75 A.L.R. 378 (1931) ; 120 A.L.R. 1124, 1143 (1939). For articles tracing the development of the judicial acceptance of hospital records in evidence see: Braham, Case Records of Hospitals and Doctors as Evidence under Business Records Act, 21 Temple L. Q. 113 (1947) ; Note, 54 Yale L. J. 868 (1945) ; Hale, Hospital Records as Evidence, 14 So. Cal. L. Rev. 99 (1941).

[6] *Lane v. Samuels,* 350 Pa. 446, 39 A. 2d 626 (1944).

with historical facts and not medical opinions and there is therefore no need to ascertain whether the author of these statements was a qualified physician. Since we are not concerned with admitting opinion evidence, proof of the identity of the person "responsible" for the statements is not required.

Although *Paxos* and *Hagopian* are inapposite to the present case, we feel it is incumbent upon us to clarify some confusing language in the *Hagopian* opinion. In *Hagopian,* language that the records ". . . must have been made by a person having knowledge of the facts set forth"[7] was inadvertently substituted for the language in *Paxos* requiring knowledge of the "person responsible for the statements." Under the *Paxos* formulation the person who actually made the entry need not have personal knowledge so long as the person *responsible* had knowledge of the events described in the entry. Thus, a record made at the direction of the examining physician would be satisfactory under *Paxos*. The court did not mean to indicate in *Paxos* that the person actually making the recording must necessarily have knowledge of the event described in the entry, nor did the court in *Hagopian* intend such an interpretation.

Order reversed and judgment entered for appellant.

---

[7] 396 Pa. 401, 406, 153 A. 2d 897, 900 (1959).