## Commonwealth v. Kurtz

*Howard R. Miller,* Assistant District Attorney, for Commonwealth.

*Howard N. Stark,* for defendant.

WIEAND, J., November 25, 1969.—George Kurtz was tried before a jury and found guilty of malicious use of telephone, a misdemeanor. The only evidence at the trial was that produced by the Commonwealth, and it is now before the court en banc for review on defendant's motion in arrest of judgment.

In passing upon such motion, the evidence must be read in the light most favorable to the Commonwealth, and it is entitled to all reasonable inferences arising therefrom. Moreover, in passing upon such a motion, all evidence actually received must be considered, whether the trial rulings thereon were right or wrong: Commonwealth v. Crews, 429 Pa. 16, 18, 19; Commonwealth v. Tabb, 417 Pa. 13, 16. The test is whether, accepting as true all the evidence upon which, if believed, the jury could have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that defendant is guilty of the crime charged: Commonwealth v. Kravitz, 400 Pa. 198, 201; Commonwealth v. Crews, supra.

Reading the trial record in this light, the evidence is clearly sufficient to sustain the verdict. On December 2, 1967, George Kurtz received a traffic citation for parking his car in an area located in front of Mehaffey's Candies and marked "No Parking. Loading Zone." When defendant found the ticket on his car, he stormed into Mehaffey's Candies, complained that the proprietor had called the police and left with the threat: "You creeps are going to be sorry for this." On December 7th, Mr. Gary Peters, the proprietor of Mehaffey's Candies, began to receive numerous anonymous telephone calls. When he answered these calls, the person initiating the call did not speak but promptly hung up the receiver. Between 7:30 a.m. and 9 a.m., on December 7th, Peters received approximately 40 such calls. Calls were also

received during the afternoon and evening of that day and continued until 3 a.m. on December 8th, when Peters left his receiver off the hook so that he could sleep without interruption. The calls also continued during December 8th and 9th and for several days thereafter, but in decreasing numbers. At the onset, Peters complained to the Bell Telephone Company and steps were taken promptly to trace the calls. By the use of electronic tracing equipment, the calls were traced to an unpublished telephone assigned to defendant, George Kurtz, and located in his apartment.

It is undoubtedly correct, as defendant argues, that no one saw him place the calls to Mehaffey's Candies. The offense here involved, however, is not the type of crime which is ordinarily committed before an audience. Accordingly, it was necessary that the Commonwealth rely upon circumstantial evidence. Its evidence was submitted to the jury with extensive instructions concerning the circumstantial nature thereof and the conditions which had to be met before the same could be considered as evidence of defendant's guilt. We have reviewed the Commonwealth's evidence carefully and are fully satisfied that it was sufficient to enable a jury to find beyond a reasonable doubt that it was defendant who made the calls and that the same were made repeatedly for the purpose of annoying and harassing Gary Peters.

Defendant argues that the conviction was based upon evidence which, although allowed by the trial court, was nevertheless incompetent. In making this the basis for a motion in arrest of judgment, he misconceives his remedy. His arguments, therefore, will be considered for the purpose of determining whether defendant should be awarded a new trial.

He argues, first, that the records of the Bell Telephone Company were incompetent to evidence defendant's telephone number because the person re-

cording this information was not shown to have personal knowledge that such number had been assigned to defendant's equipment. In this, there is no merit. The Uniform Business Records as Evidence Act of May 4, 1939, P. L. 42, in section 2, 28 PS §91b, provides:

"A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

It is clear that where necessity dictates, business records may be admitted into evidence even though the recorder did not have personal knowledge and where those who did have personal knowledge were not identified: Faùceglia v. Harry, 409 Pa. 155; Panama Canal Company v. Stockard & Company, 391 Pa. 374. In a business such as that of providing telephone service to thousands of homes, offices, stores and plants, there are a myriad of office and supervisory personnel, switchboard and computer operators, servicemen and repairmen, and many others who play a part in gathering and compiling information which is essential to the daily conduct of the company's business. In Fauceglia v. Harry, supra, at pages 158 and 159, Mr. Justice Cohen, speaking for a unanimous court, wrote these words which are peculiarly appropriate to the instant circumstances:

"Quite often different individuals have personal knowledge of the various phases of a transaction so that no one individual has knowledge of the entire transaction. In addition, the frequent turnover of personnel often makes it impossible to identify the employee—if it were only one—who took part in the

transaction. Under these circumstances, to require the entrant to have personal knowledge of the event recorded, and to require proof of the identity of the recorder, would exclude almost all evidence concerning the activities of large business organizations—a result diametrically opposed to the purpose and spirit of the Uniform Business Records as Evidence Act."

To require the presence in court of all persons who played a part in providing telephone service to defendant's apartment in order to identify his telephone number would be wholly unrealistic. The need to use business records became even more apparent when the serviceman who installed defendant's telephone was called but could not in his memory isolate the installation of defendant's phone from the hundreds of other installations which he had made. Much less could he testify to the number assigned. See Panama Canal Company v. Stockard & Company, supra. To the average layman, there is no doubt that the best evidence of a person's telephone number is the permanent record thereof maintained by the telephone company. Why, then, should such evidence be excluded in a court of law? We perceive no reason for such a result. To suggest, as defendant does, that the law should reject as untrustworthy the telephone company's records of the numbers of its customers, defies logic and contradicts the daily practices of an entire business and social world.

Defendant also argues that the computer cards on which the sources of the annoyance calls were recorded by electronic tracing equipment should not have been admitted into evidence. The information recorded on those cards was then interpreted by an expert from the telephone company's anonymous calls section and revealed that the calls had originated at 215-797-9572, the number assigned to the telephone equipment installed in defendant's apartment.

That this evidence, as well as all computer evidence, is hearsay must be conceded. Nevertheless, it is admissible as an exception to the hearsay rule. That exception is based upon (1) the necessity for such evidence, and (2) the circumstantial probability of its trustworthiness: Fauceglia v. Harry, supra, at page 160, 5 Wigmore on Evidence (3d ed.) §1420; 16 Am. Jur. Proof of Facts, pp. 229 and 300, Computer Evidence, §17. That it is virtually impossible to trace an anonymous telephone call without the use of such electronic tracing equipment must be obvious even to the most unsophisticated. This equipment, when appropriately placed, can intercept calls and thereby gather and record information not readily discernible by the human senses. We are satisfied, therefore, that necessity compels the use of this evidence.

We are also satisfied of the circumstantial probability of its trustworthiness. The tracing equipment is programmed with the number of the telephone receiving the anonymous calls. As each call is received, the tracing equipment records on an individual IBM card, also prepared by machine, the date, time and source of the call. The card is then thrown automatically into a bin where it remains with other similar cards prepared for each call made to the receiving telephone. At the end of a given period, the cards are gathered together and sent to the telephone company's anonymous call center, where the cards are interpreted and compared with a record of anonymous calls maintained by the person receiving the calls. It is extremely difficult, almost impossible, to alter or forge the information punched out by the tracing device without the same becoming apparent. Tracing equipment is now used extensively and as a regular part of the telephone company's business. The chief of the company's anonymous call center testified that he knew of no instance in which a forgery of the cards

had ever been accomplished. Common sense dictates that neither the annoyed customer nor the telephone company would have any motive for doing so.

For these reasons, we believe the evidence gathered by the electronic tracing equipment and recorded on IBM cards was properly admitted. When interpreted by an expert and considered, together with all of the circumstances in this case, it pointed unequivocally to defendant's guilt.

Defendant's privately retained counsel, following the transcribing of the trial record, prepared and filed a list of additional reasons for granting a new trial. These matters were not presented to the court in the manner required by Lehigh County Rule 210(a) (3) and (4). They were not covered by defendant's brief, and they were not advanced at oral argument. Inasmuch as counsel has found these additional reasons for a new trial of such little merit as not to warrant his taking time to brief or argue the same, he will understand our decision to give them equal weight and to deny his motion without a discussion of such additional reasons. See Artley v. Champion, 33 Lack Jur. 171; 6A Standard Pa. Pract. 158.

### ORDER

And now, November 25, 1969, it is ordered that defendant's motions in arrest of judgment and for a new trial be and the same are hereby dismissed; and the said defendant is directed to appear for sentencing in Courtroom No. 1, Lehigh County Courthouse, on December 9, 1969, at 9:30 a.m.