# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, :
Department of Transportation :
  :
v. : No. 1409 C.D. 2015
  : Submitted: May 5, 2017
Northeast Community, :
                  Appellant :


BEFORE:      **HONORABLE RENÉE COHN JUBELIRER,** Judge
                       **HONORABLE ANNE E. COVEY,** Judge
                       **HONORABLE JAMES GARDNER COLINS,** Senior Judge


<u>**OPINION NOT REPORTED**</u>


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                **FILED: August 16, 2017**

      Northeast Community (Northeast) appeals from the Order of the Court of Common Pleas of Philadelphia County (trial court), affirming the May 29, 2014 Decision of the Commonwealth of Pennsylvania, Department of Transportation (Department), imposing two one-year suspensions of Northeast's Certificate of Appointment as an Official Emission Inspection Station and two $2,500.00 fines for furnishing an emission certificate of inspection without conducting an emission inspection (furnishing) and fraudulent recordkeeping. Northeast argues that the trial court erred in admitting evidence that constituted hearsay, finding that the Department met its burden of proof, and sustaining the suspensions that should have been precluded by collateral estoppel. Because we find no error in the

admission of evidence, that the Department met its burden of proof, and that the Department was not precluded from issuing the suspensions, we affirm.

Northeast is an auto care and inspection station located at 6101 Roosevelt Boulevard in Philadelphia. On April 29, 2014, the Department issued an Official Notice (April Notice), stating that it was suspending Northeast's Certificate of Appointment as an Official **Safety** Inspection Station for one year for issuing **emission inspection sticker** No. IM30579435 without a proper inspection and one year for fraudulent recordkeeping. The Department issued a second Official Notice by certified letter on May 29, 2014 (May Notice), without withdrawing the April Notice or otherwise indicating that it was intended to correct the error in the April Notice, which incorrectly referenced Northeast's Certificate of Appointment as an Official **Safety** Inspection Station rather than **Emission** Inspection Station. The May Notice suspended Northeast's Certificate of Appointment as an Official **Emission** Inspection Station for one year for furnishing **a certificate of inspection** (**emission** sticker No. IM30579435) without inspection and one year for fraudulent recordkeeping, and imposed a $2,500.00 fine for each violation. Northeast appealed both the April Notice and May Notice suspensions to the trial court.[1]

The trial court held a hearing on this matter on June 17, 2015.[2] The hearing included appeals from both the April Notice and the May Notice. Northeast

---

[1] Supersedeas was granted for the suspensions imposed in the April Notice and May Notice pending Northeast's appeal before the trial court.

[2] The trial court's hearing addressed multiple appeals filed by Northeast that were consolidated. Other witnesses were called, but their testimony was in relation to appeals from other notices that are not presently before this Court. Northeast has separately appealed to this Court from a notice dated September 24, 2014 (September Notice), permanently suspending Northeast's Certificate of Appointment as an Official Emission Inspection Station and issuing two $5,000.00 fines for second offenses of furnishing a certificate of inspection without performing an inspection and fraudulent recordkeeping, which is before the court in *Department*
**(Footnote continued on next page…)**

argued that both Notices were issued based on the same sticker number for the same alleged offenses, that the April Notice contained an error, which was the suspension of its **Safety** Certificate for an **emission** violation, and that the May Notice was issued inappropriately because the April Notice was not withdrawn first. Northeast argued that, because the Department did not withdraw the April Notice, the May Notice was barred by collateral estoppel. The Department argued that the April Notice could be withdrawn at the hearing and that Northeast was not prejudiced by allowing the trial court to sustain the appeal of the April Notice. The Department, although not officially withdrawing the April Notice, did not present any evidence in support of the April Notice, and Northeast requested that the appeal of the April Notice be sustained based on lack of evidence, which the trial court granted without objection.

Relevant to Northeast's appeal of the May Notice, the Department called Officer Otto Lorintz (Lorintz) as a witness and presented documentary evidence.[3] Lorintz testified as follows. Lorintz is employed as a covert insurance officer with Dasher, a subcontractor for the Department, where he does covert inspections of emission inspection stations. At approximately 9:00 a.m. on January 24, 2013, Lorintz requested an emission test be performed on his 2002 Suzuki XL7 at Total Corporation d/b/a station number EX57 (Getty station), located at 6301 Castor Avenue in Philadelphia. After speaking with a technician, Lorintz decided to return the following day with the proper forms for the test. The next day, Lorintz performed an emission test at his office, which his Suzuki failed, before he

---

**(continued…)**
*of Transportation v. Northeast Community* (Pa. Cmwlth., No. 1410 C.D. 2015, filed Aug. 16, 2017). The May Notice involved the first offenses of these violations.
    [3] Lorintz's testimony is found at pages 78a-131a of the Reproduced Record.

3

returned to the Getty station. The results of this test were documented in Exhibit C-1(8). At 9:25 a.m., he arrived at the Getty station to receive an emission test. After Lorintz paid $100.00, the technician took his insurance and registration cards and left the Getty station in Lorintz's car. After approximately 20 minutes, the technician returned the vehicle with new **safety and** emission inspection stickers attached.[4] Lorintz did not receive a work order or receipt. Lorintz testified that the check engine light was on both before and after he submitted the vehicle for testing.

Upon leaving the premises, Lorintz called the Dasher office. The office informed him that the new safety and emission stickers originated from station number DK72, which is Northeast. Lorintz drove the 2 1/2 miles from the Getty station to Northeast and back in approximately 10 minutes. Lorintz affirmed that safety inspections typically require 30 to 40 minutes, while an emission test takes at least 10 to 20 minutes. After getting gas, Lorintz returned to the Dasher office, where he performed another failing emission test on the vehicle.

Lorintz stated that, according to the Commonwealth of Pennsylvania Vehicle Emissions Inspection Report (VIR), Northeast tested the Suzuki at 10:49 a.m.[5] He pointed out that emission sticker number IM30579435 in the VIR matched the emission sticker that was on the Suzuki when the technician returned it to him after the purported emission test. On cross-examination, Lorintz clarified that, according to the VIR, the emission inspection reportedly began at 10:49 a.m.

---

[4] Although Lorintz apparently only requested an emission inspection, his vehicle was returned to him with new **safety and** emission stickers. The safety sticker number was AI31984930.

[5] Lorintz initially misspoke, stating that the test began at 10:29 a.m. according to the VIR, but clarified his response on cross-examination.

and was completed at 11:03 a.m.; however, during that time he was actually getting gas. Lorintz asserted that in order for the VIR to indicate that his Suzuki was being tested at the same time he was putting gas into the Suzuki's tank, Northeast engaged in "clean screening."[6] Lorintz issued a report of his findings. The trial court found Lorintz's testimony to be credible.

Additionally, the Department offered the VIR as Exhibit C-2, (R.R. at 192a), into evidence, to which Northeast asserted a hearsay objection. The Department argued that the VIR qualified as an exception to the hearsay rule because it was a business record. Lorintz testified that the VIR was created automatically when the emission test was performed, may be accessed by Northeast at any time, and is contained in his report. Lorintz has access to all of the documents in the VIR system as an employee of Dasher. The trial court overruled Northeast's objection and admitted the document, stating it would give the document the appropriate weight the trial court believed it deserved. Northeast did not present any evidence.

Because the trial court had sustained Northeast's appeal of the April Notice, only the May Notice was at issue. Based on the evidence introduced at the hearing, the trial court concluded that Northeast had committed the violations of fraudulent recordkeeping and furnishing a certificate of inspection without actual inspection. Therefore, the trial court entered the Order denying the appeal of, and reinstating, the May Notice.[7]

Northeast now appeals the trial court's Order, asserting that the trial court erred by: (1) admitting the VIR, Exhibit C-2, over Northeast's objection that the

---

[6] The term "clean screening" is used to describe the process of hooking up a second vehicle to obtain a passing test result for the first vehicle.

[7] The trial court issued a single opinion that addressed Northeast's appeals of both the May Notice and the September Notice.

5

document constituted hearsay; (2) finding that Department met its burden in proving that Northeast furnished a certificate of inspection without inspecting the vehicle and committed fraudulent recordkeeping; and (3) finding that the May Notice was not barred by collateral estoppel because the appeal of the April Notice was sustained. These questions are before this Court for review.[8] In performing this review, we are cognizant that the Vehicle Code imposes an obligation on the Department to supervise vehicle inspection stations and perform inspections thereof and authorizes it to impose various penalties for violations of the Vehicle Code or the Department's regulations that are found during these inspections. Section 4724(a) of the Vehicle Code, 75 Pa. C.S. § 4724(a).

# I

When evaluating questions of evidence on appeal, we are aware that the "trial court has broad discretion to determine whether evidence is admissible, and we will not reverse a trial court's ruling absent an abuse of discretion." *Hyer v. Dep't of Transp., Bureau of Driver Licensing*, 957 A.2d 807, 810 n.4 (Pa. Cmwlth. 2008) (citing *Commonwealth v. Cook*, 676 A.2d 639, 647 (Pa. 1996)).

> Judicial discretion, broadly defined, is the option which a judge may exercise either to do or not to do that which is proposed to him. As a guide to judicial action, it means a sound discretion exercised with due regard for what is right and equitable under the circumstances and under the law. Abuse of discretion is not merely an error of judgment; however, if, in reaching a conclusion, the law is overridden or misapplied, *or the judgment exercised is manifestly unreasonable* or

---

[8] "Our scope of review in an inspection certificate suspension case is limited to determining whether the trial court committed an error of law or whether the trial court's findings are supported by substantial evidence." *McCarthy v. Dep't of Transp.*, 7 A.3d 346, 350 (Pa. Cmwlth. 2010) (citing *Castagna v. Dep't of Transp., Bureau of Motor Vehicles*, 831 A.2d 156, 160 n.4 (Pa. Cmwlth. 2003)).

6

the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Gillespie v. Dep't of Transp., Bureau of Driver Licensing*, 886 A.2d 317, 319 (Pa. Cmwlth. 2005) (emphasis in original) (quoting *Commonwealth v. Korn*, 467 A.2d 1203, 1205 (Pa. Cmwlth. 1983)). With this standard in mind, we consider whether the trial court erred in overruling Northeast's hearsay objection and admitting Exhibit C-2, the VIR.[9]

This Court has defined hearsay as a "statement, other than one made by the declarant while testifying at a trial or hearing, offered into evidence to prove the truth of the matters asserted." *Hyer*, 957 A.2d at 810 n.4 (quoting Rule 801(c) of the Pennsylvania Rules of Evidence, Pa. R.E. 801(c)).[10] Hearsay may not be admitted unless it falls within an exception. *Id*. Rule 803 of the Pennsylvania Rules of Evidence sets forth exceptions to hearsay, which includes the following:

> **(6) Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
> (C) making the record was a regular practice of that activity;

---

[9] The trial court did not address this issue in its opinion; however, because the trial court did not direct Northeast to file a Concise Statement of Errors Complained of on Appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1925(b), this appeal is the first opportunity for Northeast to raise this issue.

[10] Rule 801(c) defines hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa. R.E. 801(c).

7

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
(E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa. R.E. 803(6). These exceptions are based on "(1) the necessity for such evidence, and (2) the circumstantial probability of its trustworthiness. 5 Wigmore, Evidence § 1420 (3d ed. 1940). In the case of records kept in the regular course of business the circumstantial guarantee of trustworthiness arises from the regularity with which they are kept." *In re Indyk's Estate*, 413 A.2d 371, 373 (Pa. 1979) (quoting *Fauceglia v. Harry*, 185 A.2d 598, 601 (Pa. 1962)). Therefore, "[a]s long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence." *Id.*

Northeast argues that the VIR constituted inadmissible hearsay because it was being offered for the truth of the matter asserted. The Department agrees that the VIR contains hearsay, as the document was offered as proof that Northeast purportedly performed the emission inspection on the 2002 Suzuki XL7 at 10:49 a.m. on January 25, 2013. However, the Department avers that the VIR is admissible under Pa. R.E. 803(6) and Section 6108 of the Uniform Business Records as Evidence Act (Business Records Act), 42 Pa. C.S. § 6108. Section 6108 of the Business Records Act provides, in relevant part:

**(b) General rule.--**A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian **or other qualified witness** testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the

8

sources of information, method and time of preparation were such as to justify its admission.

**(c) Definition.--**As used in this section **"business"** includes every kind of business, profession, occupation, calling, or operation of institutions whether carried on for profit or not.

42 Pa. C.S. § 6108 (first emphasis added).

Northeast asserts that, because the VIR is a **Department** record governed by Section 6103 of the Business Records Act,[11] 42 Pa. C.S. § 6103(a), it would not fall under the business record exceptions because those exceptions do not provide that records of a government agency are included therein. Northeast contends that, to be admissible, the VIR would have to be authenticated by the attestation of the custodian of documents and the seal of the officer.

The trial court did not abuse its discretion in admitting the VIR. While the definitions of "business" under both Rule 803(6)(b) and Section 6108(c) of the Business Records Act do not specifically include government agencies, the definitions are sufficiently broad as to encompass the Department. Moreover, the business record exception in Section 6108(c) has been used previously to admit government agency documents. *See Commonwealth v. Carter*, 932 A.2d 1261, 1268 (Pa. 2007) (holding that documents generated in the course of regularly

---

[11] This section reads, in pertinent part:

**(a) General rule.--**An official record kept within this Commonwealth by any court, magisterial district judge or other government unit, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by that officer's deputy, and accompanied by a certificate that the officer has the custody. The certificate may be made by any public officer having a seal of office and having official duties with respect to the government unit in which the record is kept, authenticated by the seal of that office . . . .

42 Pa. C.S. § 6103(a).

conducted activity in a police laboratory are admissible under the business record exception); *Hill v. Dep't of Corr.*, 64 A.3d 1159, 1170 (Pa. Cmwlth. 2013) (holding that invoices reflecting the cost of standard materials purchased for Pennsylvania's prison population were admissible as business records); *Commonwealth v. Schoff*, 911 A.2d 147, 157 (Pa. Super. 2006) (holding that a Department of Social Services document was admissible as a business record).

Additionally, Northeast argues that the VIR is not self-authenticating under Rule 902(1) and (2) of the Pennsylvania Rules of Evidence, Pa. R.E. 902(1), (2),[12] and is not admissible on those grounds. The Department agrees that the VIR is not self-authenticating, but argues that it is admissible under Rule 901(b)(1), which allows evidence to be authenticated by the "[t]estimony of a [w]itness with

---

[12] This rule provides in pertinent part:

The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:

**(1) Domestic Public Documents That Are Sealed and Signed.** A document that bears:

(A) a seal purporting to be that of the United States; any state, district, commonwealth, territory, or insular possession of the United States; the former Panama Canal Zone; the Trust Territory of the Pacific Islands; a political subdivision of any of these entities; or a department, agency, or officer of any entity named above; and

(B) a signature purporting to be an execution or attestation.

**(2) Domestic Public Documents That Are Not Sealed But Are Signed and Certified.** A document that bears no seal if:

(A) it bears the signature of an officer or employee of an entity named in Rule 902(1)(A); and

(B) another public officer who has a seal and official duties within that same entity certifies under seal--or its equivalent--that the signer has the official capacity and that the signature is genuine.

Pa. R.E. 902(1), (2).

[k]nowledge,"[13] and that Lorintz's testimony was sufficient to authenticate the VIR.

Lorintz attested to the VIR's truthfulness and explained that the VIR is created when the emission test is performed, he has access to the VIR as a Dasher office employee, Northeast also has access to the VIR, and he included the VIR as part of his report of the inspection, all of which the trial court judged to be credible. The business record exception under both the Rules of Evidence and Business Records Act permit either the custodian or **a qualified witness** to testify about the record, and Lorintz is a qualified witness. The record is also devoid of any evidence that the "source of information or other circumstances indicate a lack of trustworthiness." Pa. R.E. 803(6)(E). Therefore, the trial court did not abuse its discretion in overruling Northeast's objection and admitting the VIR under the business record exception to hearsay.

## II

Northeast next contends that the trial court erred in finding that the Department met its burden in proving that Northeast furnished a certificate of

---

[13] Rule 901(a), (b)(1) on authenticating or identifying evidence states, in part:

**(a) In General.** To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.
**(b) Examples.** The following are examples only--not a complete list--of evidence that satisfies the requirement:
        (1) *Testimony of a Witness with Knowledge.* Testimony that an item is what it is claimed to be.

Pa. R.E. 901(a), (b)(1).

inspection without inspection and committed fraudulent recordkeeping. Section 4724(a) of the Vehicle Code provides in relevant part:

> The department shall supervise and inspect official inspection stations and may suspend the certificate of appointment issued to a station or may impose a monetary penalty or may issue a warning against the station, which it finds is not properly equipped or conducted or which has violated or failed to comply with any of the provisions of this chapter or regulations adopted by the department. A schedule of all penalties, points and suspension may be established by the department by publishing a notice in the Pennsylvania Bulletin until the regulations governing these penalties are promulgated by the department. The department shall maintain a list of all stations holding certificates of appointment and of those whose certificates of appointment have been suspended. Any suspended certificate of appointment and all unused certificates of inspection shall be returned immediately to the department.

75 Pa. C.S. § 4724(a). Under the relevant law, "[a] person may not: . . . (3) Furnish, loan, give or sell certificates of emission inspection and approval to any official emission inspection station or other person except upon an emission inspection performed in accordance with this chapter." 67 Pa. Code § 177.427(3). Fraudulent recordkeeping is defined as follows:

> *Fraudulent recordkeeping*--A recordkeeping entry not in accordance with fact, truth or required procedure that falsifies or conceals one or more of the following:
> (i) That a certificate of inspection was issued without compliance with the required inspection procedure.
> (ii) The number of inspections performed.
> (iii) The individuals or station that performed the inspection.

67 Pa. Code § 177.601. When violations of the Vehicle Code and associated regulations are alleged, the Department bears the burden of proving the violations by a preponderance of the evidence, "i.e., that it is more likely tha[n] not" that the violations occurred. *Tropeck v. Dep't of Transp., Bureau of Motor Vehicles*, 847

12

A.2d 208, 212 (Pa. Cmwlth. 2004); *Kot v. Dep't of Transp.*, 562 A.2d 1019, 1020 (Pa. Cmwlth. 1989).

Northeast's argument focuses primarily on the sufficiency of Lorintz's testimony and a reiteration of its argument against the admission of the VIR. Northeast is really asking this Court to reweigh the evidence presented to the trial court to determine that Lorintz's testimony was not credible, and the VIR should not have been considered, and conclude, therefore, that the Department failed to meet its burden of proof. That is not the province of this Court, rather, "[t]he trial court, as the finder of fact, has exclusive authority to weigh the evidence, make credibility determinations, and draw reasonable inferences from the evidence presented." *Rice v. Compro Distrib., Inc.*, 901 A.2d 570, 574 (Pa. Cmwlth. 2006) (citing *Smith v. Tax Claim Bureau of Pike Cnty.*, 834 A.2d 1247, 1251 (Pa. Cmwlth. 2003)).

Lorintz credibly testified to the truthfulness of the VIR which shows that a passing emission inspection was performed on Lorintz's Suzuki at 10:49 a.m., at the time Lorintz was getting gas. Moreover, Lorintz testified that he inspected his Suzuki both before and after the Getty station purportedly performed its inspection, and the Suzuki failed both times, as was intended. Lorintz presented the failing test results. The new emission sticker, which evidenced that a test was performed on the vehicle, was assigned to Northeast, and the Getty station employee was gone in the vehicle for about 20 minutes. The trial court reasonably inferred based on the testimony and evidence that the Suzuki was taken to Northeast, Northeast issued the new stickers without testing the vehicle, and Northeast later entered the vehicle's information into the VIR before running an emission test on a different vehicle that would pass the inspection. Therefore, the evidence presented met the

13

Department's burden of proof for furnishing an emission certificate of inspection without actually conducting an inspection.

Next, while the Department's regulations do not contain a definition of "fraudulent," this Court has previously determined that fraudulent conduct "occurs when an entry in the record . . . is false, entered intentionally and with the purpose of deceiving." *Firestone Tire and Serv. Ctr., O.I.S. No. 798 v. Dep't of Transp.*, 871 A.2d 863, 867 (Pa. Cmwlth. 2005) (quoting *Fiore Auto Serv. v. Dep't of Transp., Bureau of Motor Vehicles*, 735 A.2d 734, 737 (Pa. Cmwlth. 1998)). Any "declaration[s], artifice[s,] or practice[s] designed . . . to mislead anyone inspecting the record into believing that the record was facially correct" and that a proper inspection had occurred are inherently deceitful. *Dep't of Transp., Bureau of Driver Licensing v. Midas Muffler Shop*, 529 A.2d 91, 93 (Pa. Cmwlth. 1987) (internal quotations omitted). Determining whether circumstances constitute fraud is "largely an issue of fact" to be determined by the trial court. *Dep't of Transp. v. Sortino*, 462 A.2d 925, 927 (Pa. Cmwlth. 1983).

The VIR includes the identifying information of Lorintz's vehicle, and a test time by Northeast of 10:49 a.m., which was well after he had left the Getty station. In order for the VIR to show that a test was completed on Lorintz's vehicle at that time, Northeast would have had to have deliberately input the information associated with Lorintz's vehicle while conducting an emission test on a different vehicle. By doing so, Northeast made "[a] recordkeeping entry not in accordance with fact, truth or required procedure that falsifie[d] or conceal[ed] . . . [t]hat a certificate of inspection was issued without compliance with the required inspection procedure," thus engaging in fraudulent recordkeeping. 67 Pa. Code §

14

177.601. Therefore, the Department met its burden in proving the fraudulent recordkeeping violation.

Northeast alternatively argues that the trial court was free to modify the penalty imposed, and the charge should have been reduced to careless recordkeeping.[14] A trial court may "alter the penalty if, in the trial de novo, it makes findings of facts and conclusions of law different from that of the [Department]." *Dep't of Transp., Bureau of Traffic Safety v. Kobaly*, 384 A.2d 1213, 1215 (Pa. 1978). This is not the case here. In situations where the trial court reaches the same conclusions as the Department,

> [t]he court may not . . . do more than (1) affirm the [Department's] penalty because the law as applied to the facts heard de novo leads to a conclusion of a violation of the law or (2) reverse the [Department's] penalty because the law as applied to the facts heard de novo does not lead to a conclusion of a violation of law.

*Dep't of Transp., Bureau of Traffic Safety v. Cormas*, 377 A.2d 1048, 1050 (Pa. Cmwlth. 1977). Even if the trial court was free to change the penalty, there is nothing requiring that it do so. Accordingly, any argument that the trial court could change the penalty issued is unpersuasive under these circumstances.

### III

Finally, Northeast asserts that the trial court erred in finding the Department's May Notice valid in light of the Department's April Notice alleging the same violations. Northeast argues that the Department should have been

---

[14] Careless recordkeeping is defined as "[f]ailure to sign the emission inspection test report, missing or omitting required documentation supporting the issuance of a waiver as required by § 177.281 (relating to issuance of waiver) or data entry errors proven to have no influence on the outcome of the inspection." 67 Pa. Code § 177.601.

15

collaterally estopped from imposing the suspensions and fines outlined in the May Notice because the Department failed to withdraw the April Notice prior to issuing the May Notice, and the trial court sustained Northeast's appeal from the April Notice. The Department contends that collateral estoppel does not apply because the April Notice contains an obvious error, it was withdrawn at the hearing before the trial court, and no hearing on the merits of the appeal was ever held.

The May Notice was issued in order to correct a mistake in the April Notice, although, unfortunately, the May Notice contained no indication of this.[15] The April Notice notified Northeast that its "Certificate of Appointment as an Official **Safety** Inspection Station" was being suspended because Northeast had improperly "issued **emission** inspection sticker IM30579435" to the 2002 Suzuki. (R.R. 193a (emphasis added).) The May Notice corrected this error by suspending Northeast's "Certificate of Appointment as an Official **Emission** Inspection Station. (*Id.* at 184a (emphasis added).) "[T]his court has held that an administrative agency may, on its own motion, correct typographical, clerical and mechanical errors, as well as undisputed factual errors and factual misconceptions, provided proper notice and explanation is given." *Johnson v. Workers' Comp. Appeal Bd. (Budd Co.)*, 693 A.2d 1015, 1017 (Pa. Cmwlth. 1997); *Kellams v. Pub. Sch. Employees' Ret. Bd.*, 391 A.2d 1139, 1141 (Pa. Cmwlth. 1978), *aff'd*, 403 A.2d 1315 (Pa. 1979) ("Plaintiffs' argument that the Commonwealth is estopped from correcting its mistake simply is not the law in Pennsylvania.").

Even had the second notice not been issued to correct an error, collateral estoppel would not apply. This Court has defined collateral estoppel as follows:

---

[15] The discussion of these two notices at the hearing can be found at R.R. at 14a-20a.

> [C]ollateral estoppel bars a subsequent lawsuit where (1) an issue decided in a prior action is identical to one presented in a later action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action, and (4), the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*J.S. v. Bethlehem Area Sch. Dist.*, 794 A.2d 936, 939 (Pa. Cmwlth. 2002). The issue with regard to the first notice, the April Notice, was the validity of the Department's suspension of Northeast's **safety** inspection Certificate of Appointment, while the issue with regard to the second notice, the May Notice, was the validity of the Department's suspension of Northeast's **emission** inspection Certificate of Appointment. Thus, each appeal addressed distinct legal issues. Because the issues being decided were not identical, collateral estoppel does not apply to bar the Department from issuing, and the trial court from deciding, the validity of the May Notice. Accordingly, the trial court did not err in finding the May Notice valid.

For the aforementioned reasons, we affirm the Order of the trial court.

_____
**RENÉE COHN JUBELIER,** Judge

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, : 
Department of Transportation : 
                                      : 
               v. :   No. 1409 C.D. 2015
                                        : 
Northeast Community, : 
                          Appellant : 

# O R D E R

**NOW**, August 16, 2017, the Order of the Court of Common Pleas of Philadelphia County, entered in the above-captioned matter, is hereby **AFFIRMED**.

 

_____
**RENÉE COHN JUBELIRER,** Judge